CHARLES E. MALONE *et al. v.* AUSTIN PEAY *et al.*[*]

*(Nashville. December Term, 1927.)*

Opinion filed June 16, 1928.

1. **CHANCERY PLEADING AND PRACTICE. INJUNCTION. MOOT QUESTION.**

Where it appears that the act sought to be enjoined has been consummated, the bill presents only a moot question insofar as it seeks an injunction and will be dismissed. (Post, p. 433.)

2. **CHANCERY PLEADING AND PRACTICE. RIGHTS OF COMPLAINANT.**

Where a bill prays for an injunction and, in event payments have been made on the transaction sought to be enjoined, seeks a recovery on the ground that said payments are authorized and illegal, the complainant is entitled to a hearing in the Supreme Court on this aspect of the bill. (Post, p. 433.)

3. **TAXPAYER. PUBLIC FUNDS. RIGHT TO BRING SUIT AGAINST OFFICERS.**

A suit may be maintained by a taxpayer to recover public money unlawfully paid out by officials without any previous demands upon officials to bring it, since it is antagonistic to the interests of the officers and the circumstances are such that the suit cannot be brought and directed by such officers without serious embarrassment to them. (Post, p. 433.)

Citing: Burns v. City of Nashville, 142 Tenn. (15 Thomp.), 541.

4. **PARKS AND FORESTRY COMMISSION. POWERS. LIMITATIONS.**

The Act of the Legislature creating the Park and Forestry Commission authorized it to acquire land by gift, purchase and con-

demnation to be used for public purposes, forbade the Commission to acquire or contract for lands in excess of appropriation made by law but no appropriation was made in the Act. (Post, p. 434.)

Citing: Acts 1925, ch. 55.

5. PARK AND FORESTRY COMMISSION. AUTHORITY TO PURCHASE CERTAIN LANDS. LIMITATIONS.

Where it appears that by Act of the Legislature the Park and Forestry Commission is authorized to purchase certain lands, upon terms and conditions set out in an option and modified in the Act; to purchase only in the event that United States of America shall by proper legislative Act of Congress, within two years from the passage of this Act have first designated said lands to be included as a National park area, to be maintained as such by the United States of America; that the Governor of the State of Tennessee and the Attorney-General thereof, shall consummate said purchase, when all of the other terms and conditions thereof, as set forth herein, have been fully and completely complied with; that said Commission, proceeding through the officials named, to acquire said lands of the Little River Lumber Company, subject to a reservation of timber rights and other rights by that company, provided the United States of America by Act of Congress, within two years from the passage of Chapter 57 of the Acts of 1925, should designate said land to be included as a National park area to be maintained by the United States; that by Act of Congress the Secretary of the Interior was authorized to accept by donation "the absolute title in fee of the lands hereinbefore mentioned," etc., etc., the Secretary of the Interior was only authorized to accept for park purposes, on behalf of the government lands within the area referred to, the title to which "shall have been vested in the United States in fee simple," the Tennessee Park and Forestry Commission were only authorized to buy said lands designated to be included within a National park area designated by Act of Congress, and the purchase of said land with a reservation of timber rights and other reservations set out by the Act of the Legislature was unauthorized by the Act of Congress was not acquired. (Post, p. 434.)

Citing: Acts 1925, ch. 57.

### 6. LAND TITLES.  FEE SIMPLE.  DEFINED.

In Tennessee a title in fee or in fee simple is a full and absolute estate, beyond and outside of which there is no other interest, or even shadow of right.  It is an indefeasible title or estate, in which is blended the right of possession and the right of property.  The owner of such a title can expel all invaders from his possession.  (Post, p. 437.)

Citing:  Earnest v. Little River Land & Lumber Co., 109 Tenn. (1 Cates), 427, 435; Bailey v. Henry, 125 Tenn. (17 Cates), 390, 399.

### 7.  LAND TITLES.  FEE SIMPLE.  TITLE UNDER A MORTGAGE.  LIFE ESTATES.  FEE DETERMINABLE.

While one, holding under a mortgage which conveys the entire estate, in an application for insurance may be said to own a fee simple title, it is clear that one claiming under a deed conveying part of a property, a life estate, or a fee determinable, cannot be said to own in fee simple.  (Post, p. 438.)

Citing:  Hughes v. Millers' Mutual Fire Ins. Co., 147 Tenn. (20 Thomp.), 164.

### 8.  CONSTITUTIONAL LAW.  LEGISLATIVE ACT.  BODY NOT BROADER THAN CAPTION.

An act which authorized the acquisition of property by a branch of the State government, on condition named and "upon other conditions" and the body of the act sets out such "other conditions," which are merely conditions contemplated by the body of the act is not broader than the caption, so as to render it void under our constitution.  (Post, p. 438.)

Citing:  Acts 1925, ch. 57; Constitution of Tennessee, Art. 2, sec. 17.

### 9.  CHANCERY PLEADING AND PRACTICE.  DEMURRER.  APPEAL.  REMAND.

Where the Chancellor erroneously sustains a demurrer to a bill which raises other questions than the right to an injunction, this Court will remand the cause for answer and proof.  (Post, p. 439.)

---

*Headnotes 1. Injunctions, 32 C. J., section 61; 2. Evidence, 22 C. J., section 70; 3. States, 36 Cyc., p. 909; 4. Estates, 21 C. J., section 9; 5. States, 36 Cyc., p. 869; 6. Statutes, 36 Cyc., p. 1036.

Appeal from the Chancery Court of Davidson County. —HON. JOHN R. AUST, Chancellor.

R. L. SADLER, for complainant, appellants.

L. D. SMITH, Attorney-General, W. F. BARRY, Assistant Attorney-General, and A. B. BROADBENT, for defendant, appellee.

J. B. WRIGHT, for defendant Little River Lumber Co.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by citizens and taxpayers of Tennessee against the Governor, the Treasurer, the Secretary of State, and the Little River Lumber Company. The primary object of. the bill was to enjoin the State officials named from completing the purchase of certain lands of the Little River Lumber Company, which purchase was supposed by State officials to have been authorized by Chapter 57 of the Acts of 1925. The bill averred that various conditions prescribed by said Act had not been met and furthermore averred that the said Act was unconstitutional, and the purchase, therefore, unauthorized.

An injunction was issued as prayed, under *fiat* of one of the Criminal Judges of Davidson County. There was a motion to dissolve the injunction and to dismiss the bill by the said State officials and by the Little River Lum-

ber Company. A demurrer to the bill was likewise interposed by these defendants. Upon the hearing the Chancellor dissolved the injunction and dismissed the bill. The complainants prayed and were granted an appeal.

(1) At the bar of this court it was conceded that the purchase of said lands, sought to be enjoined, had been consummated. Such being the fact, the bill presents only a moot case, in so far as it seeks an injunction. An injunction would accomplish nothing now, and the bill in this aspect cannot be maintained.

(2) In addition to the injunction prayed for, and in the event payments had already been made to the Little River Lumber Company on this account, charging that said payments were unauthorized and illegally made, the bill sought a recovery thereof from the Little River Lumber Company and the other defendants. On this aspect of the bill, the complainants are entitled to a hearing in this Court.

(3) *Burns* v. *City of Nashville,* 142 Tenn. (15 Thompson), 541, was a suit by taxpayers of that city against officers of the city and other defendants, to whom it was alleged that said city officers had unlawfully paid out money of the city, for the recovery of said money. This Court held that the suit was well brought since it was antagonistic to the interests of the officers of the corporation and the circumstances were such that the suit could not be brought and directed by such officers without serious embarrassment to them. It was held in this case that in such a situation taxpayers of the city might go on with such a suit without any previous demand on the city officers to bring it. These conclusions of the Court were well supported by authorities cited in that opinion.

157 Tenn.—28.

The case before us is in the same plight. The bill seeks a recovery against the State officials as well as against the Little River Lumber Company. Under Chapter 57 of the Acts of 1925, the approval of the Attorney-General was necessary, before the purchase of the lands could be effected. We must, therefore, assume that the transaction was approved by the Attorney-General. It thus appearing that the officers of the State, who would ordinarily bring a suit like this, had interests antagonistic thereto and would be embarrassed by its maintenance, we think this is a proper case for taxpayers to sue on behalf of the State.

(4) Chapter 55 of the Acts of 1925, created a Park and Forestry Commission to acquire land by gift, purchase, and condemnation to be used for public purposes. No appropriation was made in this Act to pay for lands to be acquired by this Commission and Section 3 of the Act forbade the Commission to acquire or contract for lands in excess of appropriation made by law.

(5) Chapter 57 of the Acts of 1925, after a lengthy preamble authorized the Park and Forestry Commission to purchase certain lands from the Little River Lumber Company, upon terms and conditions set out in an option recited and modified in the Act.

This purchase was authorized, however, "only in the event that United States of America shall by proper legislative Act of Congress, within two years from the passage of this Act have first designated said lands to be included as a National park area, to be maintained as such by the United States of America."

It was further provided that the people of Knoxville and vicinity, or the municipality of Knoxville, or the County of Knox, should pay one-third of the purchase

price of said lands. The bill concedes that this condition has been complied with.

Section 3 of Chapter 57 of the Act is as follows:

"That under the terms of said option or offer thus accepted, the said Little River Lumber Company reserves the right to cut and remove, within the period of fifteen years from January 26, 1925, all the timber over ten inches in diameter at three feet from the ground, the virgin timber on Middle Prong Water Shed, Pigeon River Water Shed, Cades Cove and Cap Shaw that has not been previously cut over; and also the right to cut and use any timber necessary to clear land for rights of way for its logging roads and trails, for camp sites and for any other purposes necessarily connected with its timber or logging operations; including timber for cribbing and cross-ties. Said Little River Lumber Company also reserves rights of way for railroads, logging roads, inclines, camp sites, trails, terminals, shops and all other purposes of logging operations; also rights of ingress, egress and regress over said lands for such purposes. Said Little River Lumber Company also reserves the title to all railroad material and equipment on said lands, which said material and equipment shall be removed from said lands within twelve (12) months after the cutting of the timber on said lands is completed."

Further provisions of Chapter 57 of the Acts of 1925 set out details as to closing the transaction, how payment shall be made and other matters. It is said in Section 4 that "the Governor of the State of Tennessee and the Attorney-General thereof, shall consummate said purchase, when all of the other terms and conditions thereof, as set forth herein, have been fully and completely complied with."

It thus appears that the Act just summarized authorized the Park and Forestry Commission, proceeding through the State officials named, to acquire said lands of the Little River Lumber Company, subject to a reservation of timber rights and other rights by that company, provided the United States of America by Act of Congress, within two years from the passage of Chapter 57 the Acts of 1925, should designate said land to be included as a National park area to be maintained by the United States.

The bill herein alleges among other things, that by Act of Congress the Secretary of the Interior was authorized to accept by donation "the absolute title in fee of the lands hereinbefore mentioned," etc., etc. Referring to this Act of Congress mentioned in the bill, approved May 22, 1926, and set out in Chapter 54 of the Acts of 1927 of Tennessee, we find it provides:

"That when title to the lands within the acres hereinafter referred to shall have been vested in the United States in fee simple, there shall be, and are hereby, established, dedicated and set apart as public parks for the benefit and enjoyment of the people . . . the tract of land in the Great Smoky Mountains, in the States of North Carolina and Tennessee, being approximately Seven Hundred and Four Thousand acres recommended by the Secretary of the Interior in his report of April 14, 1926, which area or any part or parts thereof as may be accepted on behalf of the United States in accordance with the provisions hereof, shall be known as the Great Smoky Mountains National Park."

The Act of Congress then contains various other provisions with reference to the acceptance and protection of this land by the Secretary of the Interior and contains

a description of a boundary which it is conceded includes the land of the Little River Lumber Company.

It will be seen that the Secretary of the Interior was only authorized to accept for park purposes on behalf of the government lands within the acres referred to, the title to which "shall have been vested in the United States in fee simple."

The Tennessee Park and Forestry Commission and the State officials were only authorized to buy of the Little River Lumber Company land designated to be included within a National Park area by Act of Congress. The Act of Congress having designated land, the title to which could be vested in the United States in fee simple, the Tennessee Park and Forestry Commission and the State officials were without power, under Chapter 57 of the Acts of 1925, to take a different title to this land. In other words, they were only authorized to buy property that the Government had accepted, or designated for acceptance.

The Act of Congress did not sanction the acceptance by the government for park purposes of land burdened with any reservation, and the Park and Forestry Commission and the State officials were without warrant to buy any land or interest in land, out of the appropriation of Chapter 57, Acts of 1925, that had not been accepted by the Government by proper Act of Congress.

(6) In Tennessee a title in fee or in fee simple is a full and absolute estate, beyond and outside of which there is no other interest, or even shadow of right. It is an indefeasible title or estate, in which is blended the right of possession and the right of property. The owner of such a title can expel all invaders from his possession. *Earnest* v. *Little River Land & Lumber Co.*, 109

Tenn. (1 Cates), 427, 435; *Bailey* v. *Henry*, 125 Tenn. (11 Cates), 390, 399.

(7) In *Hughes* v. *Millers' Mutual Fire Insurance Co.*, 147 Tenn. (20 Thomp.), 164, we recognized that in an application for insurance one might be said to own a fee-simple title although the estate was mortgaged. The deed, however, in that case conveyed the entire estate to the insured and the Court was careful to point out that one claiming under a deed conveying part of a property, a life estate, or a fee determinable could not be said to own in fee simple. In the transaction here before us the Park and Forestry Commission and the State officials undertook to acquire only part of the title and estate in this land from the Little River Lumber Company. That company reserved timber rights, rights of way and various other rights in said land. This was no fee-simple title to the land. This was no such property as the Government by Act of Congress had accepted for park purposes. It was accordingly no such property as the Park and Forestry Commission and the State officials were authorized to buy.

It is apparent from Chapter 57 of the Acts of 1925, that the Legislature supposed that Congress would accept the Little River Lumber Company tract subject to the timber rights and other rights reserved by that company. As seen, however, Congress has passed no Act accepting for park purposes lands, the title to which cannot be absolutely and wholly conveyed to the United States.

(8) We do not think that Chapter 57 of the Acts of 1925 is unconstitutional—in violation of Section 17 of Article 2—by reason of the inclusion therein of the provision for the conveyance of the tract of land to the

United States Government for park purposes. The cap-
tion of the Act recites that it is one authorizing the pur-
chase of said lands on condition that the people of
Knoxville, etc., will contribute one-third of the purchase
price "and upon other conditions." The acceptance by
the Government of the land for park purposes was mere-
ly one of the other conditions contemplated, and the pro-
vision for the transfer to the Government is merely by
way of giving effect to said conditions. This matter is,
therefore, not beyond the caption of the Act.

(9) We are of opinion that the Chancellor was in
error in sustaining the demurrer and that the bill in
the aspect heretofore indicated requires an answer.
Other questions suggest themselves, but we prefer to have
the bill answered and all the facts before us before fur-
ther consideration of the case.