Steven McINTYRE, Plaintiff/Appellee,

v.

Charles TRAUGHBER, Chairman of
the Tennessee Board of Paroles,
Defendant/Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

June 24, 1994.

Charles W. Burson, Atty. Gen. and Reporter, C. Anthony Daughtrey, Asst. Atty. Gen., for appellant.

David L. Raybin, Hollins, Wagster & Yarbrough, Nashville, for appellee.

## OPINION

KOCH, Judge.

This appeal involves the efforts of a prisoner convicted of a sex crime to prevent the Board of Paroles from requiring him to obtain a certificate of safety before being released on mandatory parole. The prisoner filed a civil rights action in the Chancery Court for Davidson County alleging that the certification requirement could not be applied to him. The trial court, sitting without a jury, enjoined the board from requiring the prisoner to obtain a certificate of safety and awarded him $5,250 in attorney's fees and costs. We have determined that the board's appeal is now moot because the prisoner has been released from custody and his sentence has expired. Accordingly, we vacate the judgment and remand the case for further proceedings consistent with this opinion.

### I.

In October 1976, a Dickson County jury found Steven McIntyre guilty of several criminal offenses, including one crime against nature charge. For the crime against nature conviction, Mr. McIntyre received an indeterminate sentence of not less than five years nor more than five years in the Tennessee State Penitentiary. This sentence was to be served after Mr. McIntyre served the sentences for his other convictions.

Tennessee's parole statutes authorized two types of parole in 1976 when Mr. McIntyre was convicted. The first type was "discretionary parole" which was available after the prisoner had served the minimum sentence required by the indeterminate sentence law; the second type was "mandatory parole" which was granted six months prior to the completion of the maximum sentence.[1]

Prisoners convicted of sex crimes received different scrutiny for parole than other prisoners. As a result of legislation enacted in 1957, no person convicted of a sex crime could be paroled "unless the Department of

---

1. The General Assembly created "mandatory parole" in 1974. Act of Mar. 20, 1974, ch. 624, § 5, 1974 Tenn.Pub.Acts 612, 614–15, now codified at Tenn.Code Ann. § 40–28–117(b) (1990).

Mental Health, after an examination of such person, certifies to the Board of Pardons and Paroles that he could be released with safety to the public." [2]  In 1975 the Attorney General and Reporter advised the board that it should require certificates of safety for sex offenders released on both discretionary and mandatory parole.[3]  The General Assembly later enacted different certification requirements for sex offenders, but these requirements did not apply to crimes committed prior to July 1, 1982 [4] and thus did not apply to Mr. McIntyre who was convicted in October 1976.

The board denied Mr. McIntyre's request for discretionary parole in November 1990. Thereafter, because of sentence credits earned while he was incarcerated, Mr. McIntyre's mandatory parole date changed from January 1992 to September 15, 1991. Four months before his mandatory parole date, Mr. McIntyre filed this suit seeking to prevent the board from requiring him to obtain the certificate required by Tenn.Code Ann. § 40–28–116(a)(2) (Supp.1993) as a condition to being released on mandatory parole.[5]  The board responded by asserting that Mr. McIntyre would not be judged by the standards in Tenn.Code Ann. § 40–28–116(a)(2) but rather by the "standard under which the prisoner was sentenced." [6]

The trial court granted Mr. McIntyre a judgment on the pleadings after determining that applying Tenn.Code Ann. § 40–28–116(a)(2) retroactively to Mr. McIntyre would violate Article I, Section 11 of the Tennessee Constitution which prohibits ex post facto laws. Accordingly, the trial court enjoined the board from applying Tenn.Code Ann. § 40–28–116(a)(2) or Tenn.Code Ann. § 40–28–117(b)(6) (1990) to Mr. McIntyre and awarded him $5,250 in attorneys fees under 42 U.S.C. § 1988 (Supp.1994). The trial court did not, however, specifically enjoin the board from requiring Mr. McIntyre to comply with any certification requirement that might have existed when he was convicted in 1976.

The board appealed to the Court of Criminal Appeals two days after Mr. McIntyre became eligible for mandatory parole. Mr. McIntyre was not released until he had served the remainder of his sentence because he did not obtain a certificate of safety. Following his release, Mr. McIntyre moved to dismiss the board's appeal because of mootness. Rather than acting on the motion, the Court of Criminal Appeals transferred the case to this court on the ground that the appeal was not within its subject matter jurisdiction. *McIntyre v. Traughber*, App. No. 01–C–01–9110–CH–00318, slip op. at 8 (Tenn. Crim.App. Dec. 31, 1992).

---

2. Act of Mar. 21, 1957, ch. 353, § 1, 1957 Tenn. Pub.Acts 1196.

3. Opinion letter to Charles M. Traughber dated February 18, 1975. The Attorney General adhered to this opinion in 1988, *see* Op. Att'y Gen. U88–43 (Apr. 18, 1988), and again advised the board in 1990 that the 1957 certificate of safety requirement should be applied to sex offenders convicted prior to July 1, 1982 unless the 1989 amendments to Tenn.Code Ann. § 40–28–116(a) are less restrictive in which case those amendments should be applied. *See* Op. Att'y Gen. 90–10 (Jan. 29, 1990).

4. These later certification requirements for offenses committed on or after July 1, 1982 are contained in a variety of acts passed by the General Assembly. The certification requirements in the Tennessee Criminal Sentencing Reform Act of 1982 [Act of Apr. 8, 1982, ch. 868, § 1, 1982 Tenn.Pub.Acts 556, 583] applied to crimes committed on or after July 1, 1982. The certification requirements pertaining to persons convicted of aggravated rape contained in the Tennessee Comprehensive Correction Improvement Act of 1985 [Act of Dec. 5, 1985, ch. 5,

§ 36, 1986 Tenn.Pub.Acts (First Extraordinary Sess. 1985) 22, 38] applied to crimes committed after December 11, 1985. Finally, the certification requirements contained in the 1989 amendments to Tenn.Code Ann. §§ 40–28–116 and 40–28–117 [Act of April 24, 1989, ch. 227, §§ 30–33, 1989 Tenn.Pub.Acts 326, 330] became effective on May 2, 1989, and the requirements contained in the 1989 amendment to Tenn.Code Ann. § 40–35–503 [Act of May 24, 1989, ch. 591, § 6, 1989 Tenn.Pub.Acts 1169, 1349–50] became effective on November 1, 1989.

5. At the time of this suit, Tenn.Code Ann. § 40–28–116(a)(2) required a determination "to a reasonable medical or psychological certainty that the inmate does not pose the likelihood of committing sexual assaults upon release from confinement."

6. The board's response stated that it was relying on "the opinion of the Attorney General," presumably Op. Att'y Gen. 90–10 (Jan. 29, 1990). *See* note 3.

## II.

■ The doctrine of justiciability prompts courts to stay their hand in cases that do not involve a genuine and existing controversy requiring the present adjudication of present rights. *State ex rel. Lewis v. State,* 208 Tenn. 534, 537, 347 S.W.2d 47, 48 (1961); *Dockery v. Dockery,* 559 S.W.2d 952, 954 (Tenn.Ct.App.1977). Thus, our courts will not render advisory opinions, *Super Flea Mkt. v. Olsen,* 677 S.W.2d 449, 451 (Tenn. 1984); *Parks v. Alexander,* 608 S.W.2d 881, 892 (Tenn.Ct.App.1980), or decide abstract legal questions. *State ex rel. Lewis v. State,* 208 Tenn. at 538, 347 S.W.2d at 49.

■ Cases must be justiciable not only when they are first filed but must also remain justiciable throughout the entire course of the litigation, including the appeal. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990); *Kremens v. Bartley,* 431 U.S. 119, 128–29, 97 S.Ct. 1709, 1715 (1977); 13A Charles A. Wright et al., *Federal Practice and Procedure* §§ 3533, 3533.10 (2d ed. 1984) ("Federal Practice and Procedure"). The concept of mootness deals with the circumstances that render a case no longer justiciable. *Davis v. McClaran,* App. No. 01–A–01–9304–CH–00164, slip op. at 2, 19 T.A.M. 1–3, 1993 WL 523667 (Tenn.Ct.App. Dec. 10, 1993), *perm. app. granted* (Tenn. Mar. 28, 1994) ("[m]ootness is a doctrine of justiciability"); Federal Practice and Procedure § 3533, at 211.

■ A moot case is one that has lost its character as a present, live controversy. *McCanless v. Klein,* 182 Tenn. 631, 637, 188 S.W.2d 745, 747 (1945); *Krug v. Krug,* 838 S.W.2d 197, 204 (Tenn.Ct.App.1992); *LaRouche v. Crowell,* 709 S.W.2d 585, 587 (Tenn.Ct.App.1985). The central question in a mootness inquiry is whether changes in the circumstances existing at the beginning of the litigation have forestalled the need for meaningful relief. Federal Practice and Procedure § 3533.3, at 261. A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party. *Church of Scientology v. United States,* —— U.S. ——, ——, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992); *Knott v. Stewart County,* 185 Tenn. 623, 626, 207 S.W.2d 337, 338–39 (1948); *Massengill v. Massengill,* 36 Tenn.App. 385, 388–89, 255 S.W.2d 1018, 1019 (1952).

■ Thus, a suit brought to enjoin a particular act becomes moot once the act sought to be enjoined takes place. *Badgett v. Broome,* 219 Tenn. 264, 268, 409 S.W.2d 354, 356 (1966); *Malone v. Peay,* 157 Tenn. 429, 433, 7 S.W.2d 40, 41 (1928). Similarly, an appeal concerning the legality of a prisoner's incarceration becomes moot upon the prisoner's unconditional release. *State ex rel. Lewis v. State,* 208 Tenn. at 538, 347 S.W.2d at 49; *State v. Doe,* 813 S.W.2d 150, 152 (Tenn.Crim.App.1991).

Tennessee's courts have recognized several exceptions to the mootness rule. The two most common exceptions involve: (1) issues of great public interest and importance to the administration of justice, *Walker v. Dunn,* 498 S.W.2d 102, 104 (Tenn.1972); *New Rivieria Arts Theatre v. State ex rel. Davis,* 219 Tenn. 652, 658, 412 S.W.2d 890, 893 (1967), and (2) issues capable of repetition yet evading review. *LaRouche v. Crowell,* 709 S.W.2d at 587. Many times the courts combine these exceptions. *Bemis Pentecostal Church v. State,* 731 S.W.2d 897, 903 (Tenn. 1987); *New Rivieria Arts Theatre v. State ex rel. Davis,* 219 Tenn. at 658, 412 S.W.2d at 893; *Dockery v. Dockery,* 559 S.W.2d at 955.

## III.

■ Decisions concerning whether to take up cases that fit into one of the exceptions to the mootness doctrine are discretionary with the appellate courts. *Dockery v. Dockery,* 559 S.W.2d at 954. We have decided that our discretion in this case should be guided by *State ex rel. Lewis v. State* where the Supreme Court determined that an appeal in a case challenging the constitutionality of a statute became moot upon the prisoner's unconditional release from custody. *State ex rel. Lewis v. State,* 208 Tenn. at 538, 347 S.W.2d at 49.

Mr. McIntyre no longer has a personal stake in the outcome of this litigation. He has served his entire sentence and has been released from custody. He can no longer be incarcerated for his 1976 crime against na-

ture conviction, and the courts cannot provide him with any relief greater than the release he has already obtained by serving his entire sentence.

We have also determined that this case does not involve one of the exceptional situations that would warrant addressing the appeal on its merits. The record before us does not reveal how many, if any, other prisoners are currently incarcerated for sex crimes committed prior to July 1, 1982. Thus, we have no way to determine whether the issues in this case are of great importance to the administration of justice or whether cases like this will occur again and evade effective judicial review.

■ The ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment and remand the case with directions that it be dismissed. *Lewis v. Continental Bank Corp.*, 494 U.S. at 482, 110 S.Ct. at 1256; *United States Dep't of Treasury v. Galioto*, 477 U.S. 556, 560, 106 S.Ct. 2683, 2686, 91 L.Ed.2d 459 (1986); Federal Practice and Procedure § 3533.10, at 426–27. Vacating the trial court's judgment removes its precedential value. The judgment, therefore, is not res judicata between the parties and cannot be used to preclude the State from adopting a similar interpretation of the certification requirements in later proceedings involving other prisoners. *Savidge v. Fincannon*, 836 F.2d 898, 906 (5th Cir.1988).

#### IV.

■ We are still faced with the trial court's decision to award Mr. McIntyre his attorney's fees and costs even though we have found that the issues concerning the application of the certificate of safety requirements to Mr. McIntyre are now moot. Attorney's fee awards under 42 U.S.C. § 1988 are byproducts of the suit and are wholly unrelated to the subject matter of the litigation. *Diamond v. Charles*, 476 U.S. 54, 70–71, 106 S.Ct. 1697, 1708, 90 L.Ed.2d 48 (1986). A claim for attorney's fees does not resuscitate an otherwise moot case, *Lewis v. Continental Bank Corp.*, 494 U.S. at 480, 110 S.Ct. at 1255, and at the same time, the expiration of the underlying case does not

moot a controversy over attorney's fees already incurred. *Dahlem v. Board of Educ.*, 901 F.2d 1508, 1511 (10th Cir.1990).

■ Decisions concerning a party's entitlement to attorney's fees under 42 U.S.C. § 1988 require an inquiry separate from the merits of the underlying case. *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 451–52, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982). The inquiry is whether the party seeking attorney's fees is a "prevailing party" for the purposes of the statute since no fee award is permissible until the party seeking the fee has crossed the statutory threshold of prevailing party status. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989).

■ In order to prevail, a party must succeed on a significant issue in the litigation that achieves some of the benefit the party sought when it brought the suit. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The party's success, however, must be more than a technical, *de minimis* victory. *Texas State Teachers Ass'n v. Garland Indep Sch. Dist.*, 489 U.S. at 792–93, 109 S.Ct. at 1493–94. A plaintiff "prevails" when the actual relief on the merits of the claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992).

■ The plaintiff cannot be a prevailing party for the purpose of 42 U.S.C. § 1988 when its case becomes moot before the trial court issues a judgment. Thus, the United States Supreme Court held that an inmate who challenged the prison's magazine subscription policy was not a prevailing party because he had been released before the trial court granted relief and, therefore, could not have benefitted personally from any of the changes in prison policy brought about by his lawsuit. *Rhodes v. Stewart*, 488 U.S. 1, 4, 109 S.Ct. 202, 203–04, 102 L.Ed.2d 1 (1988).

The same result does not necessarily follow when a case becomes moot while an

appeal is pending. Under these circumstances, a plaintiff who obtained relief in the trial court could not be a prevailing party in the appellate court but could be a prevailing party in the trial court. The United States Supreme Court has not decided this issue but has noted that it is "a question of some difficulty." *Lewis v. Continental Bank Corp.*, 494 U.S. at 483, 110 S.Ct. at 1256. Many federal courts have determined that plaintiffs who actually benefit from a trial court's judgment may be considered prevailing parties notwithstanding the fact that the case becomes moot, through no acquiescence by the defendant, while the appeal is pending. *See, e.g., Dahlem v. Board of Educ.*, 901 F.2d at 1512–13.

The record raises substantial questions concerning whether Mr. McIntyre was a prevailing party in the trial court. Even though the trial court granted Mr. McIntyre relief, there is no indication that either the Department of Correction or the board ever changed their conduct in a way that directly benefitted him. Mr. McIntyre gained his release from prison not because the board dropped its insistence that he obtain a certificate of safety but because he had served his entire sentence.

We need not decide this issue in this case, however, because the State has not specifically challenged the trial court's decision to award Mr. McIntyre his attorney's fees. It did not include this question as one of the issues in either its original or supplemental brief, and it did not include it in its response to Mr. McIntyre's motion to dismiss the appeal. Apparently the State assumed that Mr. McIntyre could not be a prevailing party if it succeeded in overturning the trial court's decision on appeal. While its assumption was correct insofar as the appeal is concerned, it was not necessarily correct insofar as the trial court was concerned.

Except for three circumstances not present in this case, this court will not consider issues that the parties have not presented for review. Tenn.R.App.P. 13(b). Accordingly, through the State's inaction, we will leave the portion of the trial court's judgment awarding Mr. McIntyre his attorney's fees undisturbed.

**V.**

Based on our finding that this appeal is moot, we vacate the portion of the judgment concerning the statutory restrictions relating to the release of sex offenders on parole and remand the case to the trial court with directions to enter an order dismissing that portion of the case. We also direct the trial court to leave intact the portion of the judgment awarding Mr. McIntyre $5,250 in attorney's fees and costs. In addition, we tax the costs of this appeal to the State of Tennessee.

LEWIS and CANTRELL, JJ., concur.