IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 14, 2021 Session

## IN RE CONSERVATORSHIP OF JEROME EDWARD DOUGLAS

**Appeal from the Circuit Court for Davidson County**
**No. 20P1388 Amanda Jane McClendon, Judge**

_____

### No. M2020-01685-COA-R3-CV

_____

This appeal arises from the grant of an emergency conservatorship. Specifically, the appellant, as the wife of the individual at issue, contends that the trial court improperly granted the emergency conservatorship, alleging that there existed no legal basis to do so. She further contends that the assessment of attorney's fees against her was improper. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Jacob Mason and Elyse Nida, Gallatin, Tennessee, for the appellants, Jingbin Douglas and Estate of Jerome Edward Douglas, Sr.

John M. McDonald and Sean C. Wlodarczyk, Nashville, Tennessee, for the appellees, Jerome Douglas, Jr., and Penny Judd.

H. Garth Click, Nashville, Tennessee, Pro se.

Karl D. Warden, Nashville, Tennessee, Pro se.

### MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals provides as follows:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal

## BACKGROUND AND PROCEDURAL HISTORY

The facts giving rise to this appeal stem from a "Petition for Appointment of a Conservator" (hereinafter referred to as "Petition") filed by Jed Douglas[2] ("Appellee Douglas"), the son of Jerome Edward Douglas (the "Ward"), pursuant to Tennessee Code Annotated section 34-1-132, the emergency conservatorship statute. In his Petition filed August 18, 2020, Appellee Douglas stated that the Ward had been diagnosed with Stage IV brain cancer the previous December and had undergone two brain surgeries which had left him "completely disabled, and unable to speak, unable to care for his personal needs, and unable to manage his financial affairs." The Petition alleged that the Ward was home alone for extended periods of time while his wife, Jingbin Douglas ("Appellant"), worked during the day and on weekends. Appellee Douglas also alleged that Appellant had refused hospice care for the Ward and had refused "multiple referrals to agency assistance" from the Ward's medical provider. Ultimately, the Petition contended that the Ward was "in grave danger of suffering substantial harm to his health, safety and wellbeing." Appellee Douglas stated that he was "afraid that without immediate attention" the Ward would be "in imminent danger of death from neglect."[3] Attached to this Petition was a report from the Ward's treating physician, which described the Ward's "cognitive deficits and diagnoses as evidence of a need for a fiduciary to manage [the Ward's] person and property."[4] Ultimately, the Petition requested that Appellee Douglas be appointed the Ward's conservator.

On August 24, 2020, Appellant filed a "Response to Motion for Appointment of Emergency Conservator," arguing that Appellee Douglas' Petition failed to "demonstrate that the emergency appointment of a Conservator is appropriate." A hearing on the matter was held on August 25, 2020, after which the trial court entered an order wherein it found the appointment of an emergency conservator to be appropriate. Of note, the trial court found in part that:

1. [The Ward] is actively dying and that Hospice care is not only appropriate, but the best treatment option for [the Ward].

---

opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] Appellee Jerome Douglas, Jr., uses the name "Jed" to refer to himself in the Petition.

[3] The Petition also contained numerous other allegations, including that Appellee Douglas and his sister Penny Judd bring the Ward meals every day because "there are no healthy meals prepared" for the Ward, the Ward's "home is dirty, messy, smelly, and not clean," and that Appellant is "unwilling to care for [the Ward] and/or has not been able to provide for [the Ward's] care."

[4] Specifically, the report stated that the Ward "suffers from Stage IV prostate adenocarcinoma, with metastases to the brain and numerous other sites." The report found that the Ward "lacks the mental capacity to make decisions or manage his affairs and is disabled[.]"

2. The various branches of the family of [the Ward] have issues that inhibit communication and make visitation with [the Ward] uncomfortable.

In this order, the trial court appointed Karl Warden ("Emergency Conservator") to be the Ward's emergency conservator and then set the matter for review on October 12, 2020. Shortly after the trial court's order was entered, Appellee Douglas filed a motion asking for an award of "his reasonable attorney's fees and costs."

The Ward died on September 6, 2020. On September 16, 2020, Appellant filed a motion for attorney's fees and expenses, to which was attached an affidavit as well as itemized billing. On October 5, 2020, the Emergency Conservator and the attorney *ad Litem*, who had been previously appointed, also submitted fee requests. Subsequent to the Ward's death, the trial court entered an "Order of Dismissal" on October 18, 2020. In this order, the trial court found that the conservatorship matter was now moot due to the Ward's death. However, the trial court stated that "the issues raised in pending motions, including the consideration of attorney fees shall be reserved and continued."[5] On November 23, 2020, the trial court entered an "Order Awarding Fees." In this order, the trial court awarded fees to the attorney *ad Litem*, the Emergency Conservator, and Appellee Douglas. Appellant thereafter filed a notice of appeal.

### ISSUES PRESENTED

Appellant raises numerous issues[6] on appeal for our review. We have restated these issues as follows:

1. Whether the trial court erred in appointing an emergency conservator.
2. Whether the trial court erred in assessing fees and costs against Appellant.
3. Whether the trial court should have recused itself.
4. Whether a mutual restraining order entered by the trial court was proper.

Appellees[7] raise three additional issues for our review on appeal:

1. Whether the order of dismissal entered October 18, 2020, constitutes a final judgment such as to render this appeal untimely.

---

[5] A near identical "Order of Dismissal" was filed on November 12, 2020.

[6] One of Appellant's issues on appeal concerns an order appointing a "limited healthcare fiduciary." However, as we will later discuss in more detail, *infra*, due to mootness concerns, we are only addressing the merits of Appellant's appeal to the extent it concerns whether the trial court's award of attorney's fees to Appellee Douglas was appropriate. We decline to address the trial court's order appointing a "limited healthcare fiduciary" as (1) it was rendered moot upon the Ward's death and (2) Appellant is not appealing attorney's fees pertaining to this appointment.

[7] Appellee Douglas' brief was also filed on behalf of his sister, Penny Judd. She is also an appellee in this appeal, and we note that she appears on various pleadings and filings contained in the technical record.

2. Whether the death of the Ward renders this appeal moot.[8]
3. Whether Appellees are entitled to an award of attorney's fees for a frivolous appeal.

## DISCUSSION

*Whether Appellant's Appeal is Timely*

As a threshold matter, we address whether we may exercise jurisdiction over this appeal. Specifically, we must determine whether Appellant's appeal is timely.

Rule 4(a) of the Tennessee Rules of Appellate Procedure provides that "the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from[.]" Tenn. R. App. P. 4(a). In their brief, Appellees contend that there are two orders from which an appeal may lie: the order of dismissal entered subsequent to the Ward's death and the order awarding fees. Appellees argue that, insofar as Appellant's issues on appeal relate to the conservatorship, her appeal is untimely, and therefore, this Court does not have jurisdiction over them. Respectfully, we disagree with Appellees' categorization of the order of dismissal deeming the conservatorship moot.

In support of their argument, Appellees note that, typically, orders in conservatorship proceedings that dispose of specific issues are considered to be final judgments and thus subject to appeal in accordance with Rule 4. Indeed, "this Court has recognized that when an intermediate order entered in a probate court proceeding resolves a discrete issue, the final judgment rule may be suspended." *In re Estate of Atkins*, No. E2018-02018-COA-R3-CV, 2020 WL 1320717, at *8 (Tenn. Ct. App. Mar. 19, 2020) (citing in *In re Estate of Goza*, No. W2013-02240-COA-R3-CV, 2014 WL 7246509, at *4 (Tenn. Ct. App. Dec. 19, 2014)).

Here, in connection with its dismissal of the conservatorship, the trial court stated that it reserved issues concerning attorney's fees. We conclude that the reservation of these issues clearly indicated that further review was pending in the trial court regarding the subject matter of the order that Appellees contend was final. As such, certain related issues regarding the matter lingered with no resolution until the November 23rd order awarding fees. Therefore, we decline to interpret the court's October 18th order as final for the purposes of appellate review. That order itself reserved matters pertaining to the dismissal of the conservatorship for future adjudication, and thus, issues pertaining to the dismissal and finalization of the proceedings remained. We conclude, therefore, that a final judgment was entered upon the entry of the court's order awarding fees. Appellant timely filed an appeal upon the entry of that order.

---

[8] The appointed attorney *ad Litem* for the Ward also raised this issue on appeal in his brief.

*Whether this Appeal is Moot*

Appellees and the attorney *ad Litem* also contend that Appellant's appeal is moot as the Ward died during the pendency of the proceedings and the conservatorship was ultimately dismissed. Accordingly, they contend that this Court should decline review of Appellant's issues.

"A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party." *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005) (citing *Knott v. Stewart Cty.*, 207 S.W.2d 337, 338–339 (Tenn. 1948); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d. 615, 616 (Tenn. Ct. App. 1998)). The present matter involves a dispute over attorney's fees. In order for this Court to properly assess the viability of Appellant's appeal as it relates to the award of attorney's fees, we must look to the appropriateness of the emergency conservatorship itself as the awarded attorney's fees followed from the court's decision to implement an emergency conservatorship. Indeed, we opine that "the expiration of the [emergency conservatorship] 'does not moot a controversy over attorney's fees already incurred.'" *Honeycutt ex rel. Alexander H. v. Honeycutt*, No. M2015-00645-COA-R3-CV, 2016 WL 3662166, at *1 (Tenn. Ct. App. June 30, 2016) (quoting *McIntyre v. Traughber*, 884 S.W.2d 134, 138 (Tenn. Ct. App. 1994)) (addressing the propriety of an order of protection upon finding that the expiration of said order of protection did not moot the controversy regarding attorney's fees). In light of the foregoing, we decline to find that the Ward's death renders the present appeal moot insofar as it pertains to attorney's fees arising from the emergency conservatorship.

*Whether the Trial Court Erred in Appointing an Emergency Conservator*

In her brief, Appellant sets forth three separate issues that pertain to the appointment of an emergency conservator by the trial court below. We will address each of Appellant's contentions separately.

<u>Whether the Trial Court's Appointment of a Third-Party Conservator Violated Tennessee Code Annotated Section 34-3-103</u>

Appellant first contends that the trial court erred by failing to "follow the statutory order of priority" when it appointed the emergency conservator. In support of her argument, Appellant relies on Tennessee Code Annotated section 34-3-103, which provides:

> Subject to the court's determination of what is in the best interests of the person with a disability, the court shall consider the following persons in the order listed **for appointment of the conservator**:
> (1) The person or persons designated in a writing signed by the alleged person with a disability;

- 5 -

(2) The spouse of the person with a disability;
(3) Any child of the person with a disability;
(4) Closest relative or relatives of the person with a disability;
(5) A district public guardian as described by § 34-7-104; and
(6) Other person or persons.

Tenn. Code Ann. § 34-3-103 (emphasis added). With regard to Appellant's assertions, we find, based on the record before us, that the trial court appointed an *emergency* conservator in accordance with Tennessee Code Annotated section 34-1-132(a), which provides as follows:

> If the court finds that compliance with the procedures of this title will likely result in substantial harm to the respondent's health, safety, or welfare, and that no other person . . . appears to have authority to act, willingness to act, and is acting in the best interests of the respondent in the circumstances, then the court, on petition by a person interested in the respondent's welfare, may appoint an emergency guardian or conservator whose authority may not exceed sixty (60) days and who may exercise only the powers specified in the order. Immediately upon receipt of the petition for an emergency guardianship or conservatorship, the court shall appoint an attorney ad litem to represent the respondent in the proceeding.

Tenn. Code Ann. § 34-1-132(a). As such, we are not persuaded, nor does Appellant cite to any basis supporting such a notion, that section 34-3-103 is even applicable to the present matter. Therefore, we find Appellant's argument in this regard to be without merit.

### Whether the Trial Court's Appointment Violated Appellant's Procedural and Substantive Due Process and Her Equal Protection

Appellant also argues that the trial court's emergency conservatorship appointment violated procedural and substantive due process, as well as equal protection concerning the fundamental right to marry. Appellant further asserts that the trial court's action warrants a strict scrutiny level of analysis. Specifically, she contends that "[w]hen the trial court provided no justification for its actions [in appointing a third-party conservator], it denied a spouse the right enshrined in her matrimonial oath, and substituted its own opinion that an attorney should be the arbiter of their relationship."

In light of the deficiencies in Appellant's brief, we conclude that no relief is available with respect to this issue. Rule 27(a)(7) provides that Appellant's brief shall contain:

> An argument, which may be preceded by a summary of argument, setting forth:

(A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, **with citations to the authorities** and appropriate references to the record (which may be quoted verbatim) relied on; and
(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues).

Tenn. R. App. P. 27(a)(7) (emphasis added).  Appellant's brief in this case contains neither citations to authorities to support her argument on this point nor appropriate citations to the record.  "Our Courts have 'routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as described by Rule 27(a)(7) constitutes a waiver of the issue[s] [raised].'" *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) (quoting *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000)).  As such, we find this argument waived for the purposes of this appeal.

<u>Whether the Trial Court's Order Finding the Conservatorship Appropriate Violated Procedural and Substantive Due Process For a Purported Lack of Statutory Requirements</u>

Appellant's third contention regarding the emergency conservatorship centers on her assertion that the trial court's orders failed to expressly address statutory requirements and thus denied Appellant due process.  Specifically, Appellant appears to argue that the trial court's order appointing an emergency conservatorship did not comport with the statutory requirements set forth by section 34-1-132.  In pertinent part, this section provides:

If the court finds that compliance with the procedures of this title will likely result in substantial harm to the respondent's health, safety, or welfare, and that no other person . . . appears to have authority to act, willingness to act, and is acting in the best interests of the respondent in the circumstances, then the court, on petition by a person interested in the respondent's welfare, may appoint an emergency guardian or conservator[.]

Tenn. Code Ann. § 34-1-132(a).

In support of her argument, Appellant first contends that the Ward "did not receive proper notice of this hearing [on Appellee Douglas' Petition] in time to formulate a defense to the action" such that the Ward's fundamental due process rights were violated.  As to this portion of Appellant's argument, she provides little support as to how the Ward did not receive proper notice.  Rather, at best, we would note that Appellant includes a footnote ostensibly implicating notice concerns, wherein she states "[r]equirement of notice from TN rules of civil procedure."  However, this bare phrase does little to set forth any factual or legal basis as to how notice to the Ward was inadequate. Therefore, insofar as Appellant

contends that the Ward did not receive proper notice, we conclude that her brief sets forth no substantive reasoning or support for this assertion and shall not be considered. "It is simply not the job of an appellate court to attempt to research and construct parties' arguments." *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 734 (Tenn. Ct. App. 2018) (citing *Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *9 (Tenn. Ct. App. Feb. 4, 2015)).

Appellant also argues that the trial court's findings of fact were insufficient under section 34-1-132(a). Specifically, she notes that "[t]he trial court failed to provide any findings of fact related to the likelihood of" substantial harm to the Ward's "health, safety, or welfare," and that the trial court's only justification for the emergency conservatorship was that the Ward was "actively dying, and that fact in combination with the family circumstances present, mean that an emergency conservatorship and appointment of a limited healthcare fiduciary was appropriate." Specifically, Appellant appears to argue that, contrary to the statutory requirement, the trial court did not make any findings that there could be "substantial harm to the respondent's health, safety, or welfare" so as to justify an emergency conservatorship. We disagree. Contrary to Appellant's contentions, the trial court made numerous findings showing the necessity of the emergency conservatorship. Specifically, it found, among other things, that "[h]ospice care [was] not only appropriate, but the best treatment option for [the Ward]," and that "[the Ward] is in need of care from trained and skilled care providers." Appellant argues that "[t]he Court itself found that the circumstances were not emergency." However, we do not find this supported by the record. In fact, at the hearing on Appellee Douglas' Petition, the trial court noted that "the emergency nature has been created" due to the Ward's current state. Moreover, the trial court's order states that, from the evidence and record before it, "there is clear and convincing evidence that [the Ward] is in need of a conservatorship over his person and property," and that the Ward "is in need of care from trained and skilled care providers." Thus, as we perceive it, a clear reading of the trial court's order reflects that the trial court recognized that the emergency nature of the Ward's circumstances were of a type that would fall under the provisions of the emergency conservatorship statute. Indeed, in its order, the trial court stated that "an emergency conservatorship . . . was appropriate."

Based on our review of the record, we find that the trial court did not err in finding appropriate the emergency conservatorship.

*Whether the Trial Court Abused its Discretion When Assessing Fees Against Appellant*

Appellant's next issue on appeal concerns whether the trial court abused its discretion when it assessed fees against her regarding the emergency conservatorship. Notably, in her brief, Appellant's argument as to the fees assessed against her concerns only the fees of Appellee Douglas. There is no mention or discussion in her argument as to why the trial court erred in assessing the fees of the Emergency Conservator or the attorney

*ad Litem*. As such, we shall address only the fees awarded to Appellee Douglas.

In her brief, Appellant contends that "[b]ecause [Appellee Douglas'] Petition for the Appointment of an Emergency Conservator should have failed, his fees should not be assessed against [Appellant.]" However, as we have concluded herein, we find the appointment of the Emergency Conservator to be proper. As such, we find no error on part of the trial court in awarding Appellee Douglas fees in connection with the appointment.

### Whether the Trial Court Should Have Recused Itself

Appellant maintains that the trial court demonstrated bias against an interested party, Appellant, and erred by failing to recuse itself. Specifically, Appellant contends that the trial judge "lacked impartiality, the appearance of impartiality," and that "the record is one from which an objective observer would have a reasonable doubt about her impartiality and bias."

Rule 10B of the Tennessee Supreme Court Rules provides:

> Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a written motion filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal. The motion shall be filed no later than ten days before trial, absent a showing of good cause which must be supported by an affidavit.

Tenn. Sup. Ct. R. 10B, § 1.01. Here, there is no indication that Appellant requested the trial court judge to recuse herself in the proceedings below. It is well-settled that, as a general matter, issues may not be raised for the first time on appeal. *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 7 S.W.3d 911, 916 (Tenn. Ct. App. 1999). As such, we find that Appellant has waived this argument on appeal.

### Whether a Mutual Restraining Order Entered by the Trial Court Was Proper

Appellant also raises an additional issue concerning the propriety of a mutual restraining order entered by the trial court. We first note that this mutual restraining order was an agreed order. Indeed, in its "Order Clarifying Mutual Restraining Order," the trial court made clear that it "had clear agreement from counsel for [Appellant and Appellee Douglas] as well as [Appellant and Appellee Douglas themselves]" that entry into the mutual restraining order was "satisfactory and proper." Moreover, not only did Appellant voluntarily enter into this mutual restraining order, but her argument on appeal fails to set forth any legal authority or support as to why the mutual restraining order was improper. Therefore, based on the record before us, as well as Appellant's argument as to this issue,

we find no error on part of the trial court in entering this order.

*Whether the Appellees are Entitled to an Award of Attorney's Fees for a Frivolous Appeal*

In their brief, Appellees contend that this appeal is frivolous and that they are entitled to fees on appeal. Pursuant to Tennessee Code Annotated section 27-1-122,

> [w]hen it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. The decision of whether to award damages for the filing of a frivolous appeal lies solely in the discretion of this Court. *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985). Based upon our review of the record and in the exercise of our discretion, we decline to award attorney's fees in this appeal.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE