IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 29, 2022

## STATE OF TENNESSEE v. PATTI ELIZABETH SMITH

**Appeal from the Criminal Court for Hamilton County**
**No. 304042     Barry Steelman, Judge**

---

### No. E2021-00394-CCA-R3-CD

---

The defendant, Patti Elizabeth Smith, appeals the denial of her Tennessee Rule of Criminal Procedure 35 motion to reduce the sentence imposed for her 2018 guilty-pleaded conviction of reckless endangerment. Because the defendant has served the entirety of her sentence and been released from custody, we dismiss the appeal as moot.

### Tenn. R. App. P. 3; Appeal Dismissed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and D. KELLY THOMAS, JR., JJ., joined.

Boyd Patterson, Assistant District Public Defender, for the appellant, Patti Elizabeth Smith.

Herbert H. Slatery III, Attorney General and Reporter; Edward Alan Groves, Jr., Assistant Attorney General; Neal Pinkston, District Attorney General; and P. Andrew Coyle, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On September 10, 2018, the defendant, originally charged with aggravated child neglect, pleaded guilty to the lesser included offense of felony reckless endangerment in exchange for a sentence of two years' supervised probation. A probation violation report filed on January 30, 2019, alleged that the defendant had violated the terms of her release by testing positive for the use of methamphetamines, amphetamines, and morphine. The defendant conceded the violation, and her probation was revoked on March 18, 2019. The trial court reinstated her to probation, ordered her to complete outpatient drug treatment, and granted jail credit for the period from February 13 to March 18, 2019. A second violation report filed on September 20, 2019, alleged that the defendant violated the terms of her release by absconding and by testing positive for the use of marijuana, heroin, and methamphetamine. The defendant again conceded the violations, and the trial court again

revoked and reinstated her probation, granting her jail credit for the period from October 19 to December 16, 2019. A third probation violation report filed on March 2, 2020, alleged that the defendant had violated the terms of her release by testing positive for the use of methamphetamine/amphetamines. The defendant conceded the violation, and, on March 18, 2020, the trial court revoked her probation and ordered the original two-year sentence into execution, granting her jail credit for the period from March 9 to March 18, 2020.

The defendant was placed on probation via determinate release on July 16, 2020. *See* T.C.A. § 40-35-501(a)(3) ("Notwithstanding any other provision of law, inmates with felony sentences of two (2) years or less shall have the remainder of their original sentence suspended upon reaching their release eligibility date."). A probation violation report filed on August 20, 2020, alleged that the defendant violated the terms of her release by garnering a new arrest for criminal trespassing, by failing to report the new arrest, by failing to report following her determinate release from custody, and by absconding. The report noted that the defendant's "whereabouts are unknown at this time."

Much of the defendant's testimony at the December 17, 2020 revocation hearing related to "the federal agents that follow me around" inside "this electromagnetic shield where you can't see them." The defendant insisted that she had been "coerced into" pleading guilty to the original charge of reckless endangerment "in the first place by, by a federal agent" who "told me that if I took my charge, I can move forward in Juvenile Court and, and get my son back and stuff like that." She said that the agents used "this equipment which controls thought process and motor skills," prompting her to act. She maintained that most of her actions were the result of following directions given to her by these agents.

The defendant testified that her criminal trespass charge occurred because, following her release from custody, "the federal government told me to go to my caregiver's because nobody was sending me to the hospital." She traveled to her husband's house for the purpose of having him "send me to the hospital" for treatment of her psychosis, but "his girlfriend called the police." She said that the police told her "if I was going to start any problems, I needed to leave." Her husband "told me I need to find a ride out of there, but I was having a hard time, so -- and then I was also in psychosis." The girlfriend called the police a second time, and the defendant was arrested. She entered a plea of nolo contendere to a single charge of criminal trespass.

During cross-examination, the defendant testified that, should she be released, she would go immediately to "Parkridge Valley," which she described as "my outpatient and inpatient treatment program that I've been going to for the last three years." She said that Parkridge Valley "always puts me in halfway houses and stuff like that whenever I don't have somewhere to go or me and my husband aren't getting along." She

claimed that, upon getting to Parkridge Valley, she "would call my family" or "people that, you know, let me stay with them." She also claimed that she had "found a room-and-board place" that would accept her "after I get treatment" and that her husband "would probably talk to his girlfriend."

During redirect examination, the defendant testified that she was six months pregnant. Upon questioning by the court, the defendant said, "This is number 5, and I give all my children up for adoption."

The defendant asked the court, in light of her mental health issues, "to consider letting her out and spending the balance of her sentence, either extending it, putting her out on probation, or just releasing her outright." The State noted that "it is not clear whether she has a clear place to stay, whether she has an ability to get to and from appointments or inability to get medication" and asked the court to order the defendant to serve the remainder of her sentence "and then get it behind her and move on with her life."

The trial court found that the defendant had violated the terms of her release by failing to report to the probation office following her determinate release from custody and by committing the offense of criminal trespass. The court concluded that a return to probation was not appropriate given that the defendant's "situation on the outside" was "unstable from the standpoint of where she would stay, where she would go, [whether] she gets treatment, things of that nature." The court also observed that it had to consider "the health and safety of your unborn child" and that it had "an obligation to do what's right to protect you and the public." The court ordered the sentence into execution.

On January 19, 2021, the defendant moved the trial court to "reconsider the full revocation of her suspended sentence" on grounds that, following the revocation hearing, she had found a treatment facility that was willing to accept pregnant clients. She specifically requested "[a] furlough to a rehabilitation center that accommodates pregnant clients."

At the April 22, 2021 motion hearing,[1] the court observed that it did not have "jurisdiction to grant her motion," which it classified as a motion to reduce or modify the sentence pursuant to Tennessee Rule of Criminal Procedure 35, because the defendant had been transferred to TDOC. Nevertheless, the court permitted the defendant to testify that

---

[1] This hearing occurred via video conference. In response to the COVID-19 pandemic, the Tennessee Supreme Court suspended all in-person court proceedings on March 13, 2020. *See In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Mar. 13, 2020) (Order). The court later modified "the suspension of in-person court proceedings, with appropriate safeguards," to include the continued and increased use of, among other things, video conferencing. *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Apr. 24, 2020) (Order).

she had discovered a treatment facility willing to accept pregnant women. She said that, at the time of the hearing, she had already had her baby and that her "release date is next month." The defendant reiterated that the basis of her motion to modify was that she had located a treatment facility for pregnant women, that her baby had already been born, and that she was scheduled to be released from prison within the month but said that she did not want to voluntarily dismiss her motion because "I want it to be known by the Courts that I'm saying that this has been put into execution twice, which is grounds for double jeopardy."

The trial court informed the defendant that the revocation of her probation did not violate double jeopardy principles and denied her motion. The defendant acknowledged that she had filed, pro se, a notice of appeal in this court and maintained that she did not want to voluntarily dismiss her appeal, even if it interfered with her release from custody.

In this appeal, the defendant challenges the trial court's denial of her motion, arguing that the trial court should not have denied the motion without considering the stated basis for her motion, i.e., that she had located a treatment program willing to accept her while she was pregnant.

Two circumstances implicate the application of the mootness doctrine to the defendant's appeal. First, the circumstance that prompted the motion to modify her sentence had ceased to exist by the time the motion was heard. The defendant, citing her pregnancy, specifically asked the court to modify her sentence by reinstating her to probation to join a treatment program for pregnant women. By the time of the hearing, the defendant had given birth to her child and was no longer pregnant. Second, the defendant indicated at the hearing that she had only days left on her original two-year sentence, and, as of the time of this writing, has flattened the sentence. "The doctrine of justiciability prompts courts to stay their hand in cases that do not involve a genuine and existing controversy requiring the present adjudication of present rights." *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994) (citations omitted). "A moot case is one that has lost its justiciability either by court decision, acts of the parties, or some other reason occurring after commencement of the case." *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 204 (Tenn. 2009) (citations omitted). "A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party." *Id.*; *see also McIntyre*, 884 S.W.2d at 137. Under the circumstances presented here, we cannot provide the defendant "with any relief greater than the release [s]he has already obtained by serving h[er] entire sentence." *McIntyre*, 884 S.W.2d at 138.

Accordingly, we dismiss the appeal as moot.

-4-

_____

JAMES CURWOOD WITT, JR., JUDGE