# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### AUGUST 24, 2005 Session

## MABLE B. BEAL, ET AL. v. WALGREEN CO.

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-002262-02     D'Army Bailey, Judge

### No. W2004-02925-COA-R3-CV - Filed January 12, 2006

In 2001, a pharmacy, when filling the plaintiff's prescription, gave the plaintiff the wrong medication. The plaintiff began taking the medication as directed, but she soon developed symptoms related to taking the wrong medication. The plaintiff subsequently filed suit against the pharmacy alleging negligence, misrepresentation, and strict liability, and she sought compensatory, consequential, and punitive damages. The pharmacy served the plaintiff with discovery requests specifically designed to discover the basis for the plaintiff's claim for punitive damages, and the plaintiff responded. The pharmacy deemed the plaintiff's responses inadequate, and it filed a motion to deem facts admitted, a motion for summary judgment on the plaintiff's claim for punitive damages, and a motion for summary judgment on the plaintiff's negligence claim. In response, the plaintiff filed a motion to strike the motions for summary judgment. At a hearing on the pharmacy's motion to deem facts admitted and the plaintiff's motion to strike, the trial court orally indicated its intention to grant the pharmacy's motion for summary judgment on the plaintiff's claim for punitive damages. Thereafter, the plaintiff orally stated that she wished to take a voluntary nonsuit of her remaining claims. The plaintiff has filed an appeal to this Court asking us to review the grant of partial summary judgment to the pharmacy on her claim for punitive damages. We have determined that, due to the plaintiff's decision to nonsuit her remaining claims, the present appeal is presently moot. Moreover, we find that this appeal is so devoid of merit that it warrants the imposition of damages for the filing of a frivolous appeal.

### Tenn. R. App. P. 3; Appeal as of Right; Appeal Dismissed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Larry E. Parrish, Memphis, TN, for Appellants

Pam Warnock Green, Memphis, TN, for Appellee

# OPINION

## I.
### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 15, 2001, Mable B. Beal (hereinafter "Mrs. Beal") underwent an examination by her physician after she complained of bladder control problems. Mrs. Beal's physician gave her a prescription for Imipramine.[1] Mrs. Beal took the prescription to a Walgreen Company Pharmacy (hereinafter "Walgreens") to have it filled. Jane Vaden, a pharmacist employed by Walgreens, misread the prescription to say Imuran[2] and gave Mrs. Beal that drug instead. Thereafter, Mrs. Beal began taking the Imuran believing it to be Imipramine. According to Mrs. Beal, she started experiencing weight gain, swelling, and fatigue just three weeks after she began taking the Imuran. On April 7, 2001, Mrs. Beal returned to Walgreens to have the prescription refilled. By mid-April of 2001, Mrs. Beal asserted that she began to experience shortness of breath. On April 23, 2001, hardly able to breath, Mrs. Beal was admitted to the hospital. One of Mrs. Beal's physicians determined that her symptoms were the result of taking the wrong medication and that she developed heart problems as a result. Mrs. Beal was discharged from the hospital on May 1, 2001.

On April 22, 2002, Mrs. Beal and her husband, Maynard Beal (hereinafter collectively referred to as the "Beals"), filed suit against Walgreens in the Circuit Court of Shelby County, Tennessee. In their complaint, the Beals alleged causes of action based on negligence, misrepresentation, and strict liability, and they requested compensatory, consequential, and punitive damages. Walgreens subsequently answered the complaint. On January 6, 2003, Mrs. Beal died. As a result, the trial court entered an order allowing the Beals' daughter, Deborah Gleason, to substitute for Mrs. Beal as a plaintiff in the action.

In August of 2003, Walgreens sent requests for admissions, requests for the production of documents, and interrogatories to the Beals.[3] These discovery requests were specifically designed to discover the particulars of the Beals' claim for punitive damages. The Beals responded to the

---

[1] The Food and Drug Administration approved Imipramine for the treatment of depression. WebMD, http://www.webmd.com/hw/urinary_control/hw219618.asp?printing=true (last visited Nov. 8, 2005). However, one of the side effects of the medication is that it relaxes the smooth muscles of the bladder. *Id.* Therefore, "[u]se of imipramine for the treatment of urinary incontinence is an unlabeled use of the medication." *Id.*

[2] Imuran is an immunosuppresant which reduces the effects of the body's immune system. Drugs.com, http://www.drugs.com/data/_pop1.cfm?htm=d00024A1.htm&bn=Imuran&pageid=0&type=mtm (last visited Nov. 8, 2005). It is primarily used to treat rheumatoid arthritis and to prevent the body from rejecting a transplanted kidney. *Id.*

[3] The original record filed on appeal did not contain these discovery requests. On June 9, 2005, Walgreens filed a motion with this Court seeking to supplement the record with these discovery requests, which the Beals opposed. On June 23, 2005, this Court, pursuant to Rule 24(e) of the Tennessee Rules of Appellate Procedure, entered an order remanding the motion to the trial court for consideration. On remand, the trial court entered an order on June 29, 2005 granting Walgreens' motion to supplement the record.

discovery requests, but Walgreens deemed their responses to be inadequate. In turn, counsel for Walgreens sent a letter to counsel for the Beals voicing dissatisfaction with the responses. In response to this letter, counsel for the Beals sent a letter to counsel for Walgreens stating, in relevant part, as follows:

> Certainly, you are at liberty to take whatever next step "in obtaining the discovery" you believe your zealous representation of Walgreen to require. At least, you know where our differences lie. If you file a motion, you should be prepared for a 10 – 20 page response in opposition; if you win and we eventually become appellants, the order granting your motion will be an error we will assert to be reversible. In short, I hope your client believes enough in the rightness of what you are advocating to spend $5,000 to $10,000 attempting to secure a ruling consistent with what you claim.
>
> You do not know me, and I do not know you. So, we are at the stage of what my mentor used to call "posturing and preening." This should blow over pretty quickly.
>
> But, it might help you to ask around to confirm that this could become a very expensive lawsuit for your client to try, even in [sic] you ultimately are successful. I have been told that I operate outside the bubble. You might call my friend . . . .
>
> I tell you this so your adjuster does not have to look back in a year or two and say, "Why didn't somebody tell me this before I spent more defending the case than I could have settled for a year or two ago?"

On October 14, 2004, Walgreens filed a motion with the trial court seeking to have the facts in its discovery requests deemed admitted. That same day, Walgreens filed a motion for partial summary judgment on the Beals' claim for punitive damages. In conjunction with these two motions, Walgreens also filed a motion for partial summary judgment on the Beals' negligence claim.[4]

Apparently, a trial of the Beals' complaint was set for November 15, 2004. On October 20, 2004, the Beals filed a motion to strike Walgreens' motions for summary judgment on the claim for punitive damages and the negligence cause of action arguing that they were permitted thirty (30) days to respond to Walgreens' motions. On October 29, 2004, the trial court held a hearing on Walgreens' motion to deem facts admitted and the Beals' motion to strike Walgreens' motions for summary judgment. At the hearing, the trial court, citing the Beals' inadequate responses to Walgreens' discovery requests, orally stated its intention to grant Walgreens' motion for summary judgment on the Beals' claim for punitive damages. In response to this ruling, the Beals orally stated their intention to take a voluntary nonsuit of their remaining claims. The minutes of the trial court

---

[4] Given the trial court's resolution of this case, the trial court never addressed this motion. Thus, we are not concerned with the merits of this motion on appeal.

for October 29, 2004, indicate that an "Order of Voluntary Nonsuit" was entered in this case on that date.[5]

On November 2, 2004, counsel for Walgreens presented the trial court with a proposed order granting Walgreens' motion for summary judgment on the Beals' claim for punitive damages. Likewise, counsel for the Beals presented the trial court with their proposed order granting them a voluntary nonsuit. The trial judge stated that he would enter the order granting Walgreens' motion for summary judgment first, followed by the order allowing the Beals to take a voluntary nonsuit. On November 9, 2004, the trial court entered an order granting Walgreens' motion for summary judgment on the Beals' claim for punitive damages. On November 18, 2004, the trial court entered an order allowing the Beals to take a voluntary nonsuit of their case. The Beals filed a timely notice of appeal to this Court.

## II.
### DISCUSSION

On appeal, the Beals argue, in essence, that the trial court did not have jurisdiction to enter the order on November 9, 2004 granting summary judgment to Walgreens on the Beals' claim for punitive damages because the Beals verbally announced their intention to take a voluntary nonsuit of their remaining claims during the hearing on October 29, 2004. Further, the Beals assert that the trial court erred in granting partial summary judgment to Walgreens. Specifically, the Beals ask this Court to render an opinion as to whether the trial court's grant of summary judgment on their claim for punitive damages will become the law of the case in the event the Beals decide to re-file their lawsuit. We find all of the Appellants' arguments to be without merit.

### A.
### *Voluntary Nonsuit*

We begin with the manner in which the Beals chose to voluntarily nonsuit their case. Voluntary dismissal of a cause of action is governed by Rule 41.01 of the Tennessee Rules of Civil Procedure, which provides, in relevant part, as follows:

> Subject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or of any statute, and *except when a motion for summary judgment made by an adverse party is pending*, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice *by filing a written notice of dismissal at any time before the trial of a cause* and serving a copy of the notice upon all parties, and if a party has not already been served with a summons and complaint, the

---

[5] On June 21, 2005, the Beals filed a motion asking this Court for leave to supplement the record with the trial court's official minutes from October 29, 2004. Walgreens did not oppose the motion, and this Court issued an Order on July 7, 2005 granting the Beals' motion.

> plaintiff shall also serve a copy of the complaint on that party; *or by an oral notice of dismissal made in open court during the trial of a cause*; or in jury trials at any time before the jury retires to consider its verdict and prior to the ruling of the court sustaining a motion for a directed verdict.

Tenn. R. Civ. P. 41.01 (2005) (emphasis added).  The Beals contend that they did not have to seek leave of court or submit their request in writing before they could voluntarily nonsuit their remaining claims.  Moreover, they argue that the verbal notice of their intention to voluntarily nonsuit their remaining claims had the effect of instantaneously divesting the trial court of the jurisdiction to do anything other than enter an order of dismissal without prejudice.

The Beals have misconstrued the applicable procedural rule.  At the time of the hearing on October 29, 2004, Walgreens had two motions for summary judgment pending; one motion for summary judgment on the Beals' claim for punitive damages,[6] and the other motion seeking summary judgment on the Beals' negligence claim.  Thus, the Beals did not have the right to take a voluntary nonsuit at this point in the litigation.[7]  However, our supreme court has recognized that "it is implicit in the Rule and inherent in the power of the Court that, under a proper set of circumstances, the Court has the authority to permit a voluntary dismissal, notwithstanding the pendency of a motion for summary judgment."  *Stewart v. Univ. of Tenn.*, 519 S.W.2d 591, 593 (Tenn. 1974); *see also Anderson v. Smith*, 521 S.W.2d 787, 790 (Tenn. 1975) ("And where a summary judgment is pending, the right to a nonsuit rests in the sound discretion of the trial judge.").

Although the trial court held the discretionary power to permit the Beals to take a voluntary nonsuit of their remaining claims, we have previously emphasized the procedural requirements set forth in Rule 41.01, stating:

> The above rule makes a clear distinction in the procedural requirements for taking a voluntary non-suit before trial and during the trial of the case.  *If the dismissal is made before the trial of the*

---

[6] We note that, although the trial court orally indicated during the October 29, 2004 hearing that it was granting Walgreens' motion for summary judgment on the Beals' claim for punitive damages, that ruling did not become effective until November 9, 2004, the date the trial court entered the written order.  "We note the well-settled rule that '[a] court speaks only through its written judgments, duly entered upon its minutes.  Therefore, no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered.'" *Lewis v. Brooks*, 66 S.W.3d 883, 886 (Tenn. Ct. App. 2001) (quoting *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 536 (Tenn. Ct. App. 2000) (citations omitted)); *see also Evans v. Perkey*, 647 S.W.2d 636, 641 (Tenn. Ct. App. 1982).  Thus, the motion for summary judgment remained pending until the trial court entered the order on November 9, 2004.

[7] Even if we were able to construe the trial court's oral ruling at the October 29, 2004 hearing as a final adjudication of Walgreens' motion for summary judgment on the Beals' claim for punitive damages, Walgreens' motion for summary judgment on the Beals' negligence claim remained unresolved.  Accordingly, since this motion for summary judgment was pending as well, the Beals' did not have the right at this stage of the litigation to nonsuit their remaining claims.  *See* Tenn. R. Civ. P. 41.01(1) (2005).

> *case it is to be done "by filing a written notice of dismissal."* If the dismissal is made during the trial of the case it may be made "by an oral notice of dismissal made in open court."

*Snell v. Leffew*, 558 S.W.2d 849, 850 (Tenn. Ct. App. 1977) (emphasis added). Since counsel for the Beals made an *oral announcement* of their intention to voluntarily nonsuit their remaining claims before the trial in this matter, the announcement did not, as the Beals suggest on appeal, take immediate effect at the time of announcing their intention to the court. *See Rickets v. Sexton*, 533 S.W.2d 293, 294 (Tenn. 1976) (noting that, in order to voluntarily dismiss a case prior to trial, the plaintiff is required to file a written notice of dismissal). Nevertheless, the Beals did successfully nonsuit their remaining claims. We have previously held that a proposed order of voluntary nonsuit presented by the plaintiff to the court for approval can constitute the written notice required by the rule. *See Cantrell v. Humana of Tenn., Inc.*, 617 S.W.2d 901, 903 (Tenn. Ct. App. 1981). Thus, the Beals proposed order granting them a voluntary nonsuit of their remaining claims, which they presented to the trial court on November 2, 2004, operated as their written notice under Rule 41.01.

However, the effective date of the voluntary nonsuit is the date on which the trial court enters the order permitting the plaintiff to nonsuit the case. In *Snell v. Leffew*, counsel for the plaintiff called the court clerk on January 8, 1975 and informed her that his clients wished to voluntarily nonsuit their case. *Snell*, 558 S.W.2d at 849. Nothing further transpired until June 16, 1975 when counsel for the plaintiffs filed an order of non-suit with the court clerk. *Id.* The plaintiffs subsequently filed a new action a short time later. *Id.* at 850. In response, the defendants, in an effort to have the second case dismissed for being filed beyond the applicable statute of limitations, filed a motion with the trial court pursuant to Rule 60 of the Tennessee Rules of Civil Procedure seeking to "correct" the order dismissing the original case to reflect that it was entered on January 8, 1975. *Id.* The trial court granted the defendants' Rule 60 motion and ordered that January 8, 1975 be reflected as the entry date of the order allowing the plaintiffs to nonsuit their case. *Id.* In reversing the trial court's decision on appeal, we held that,

> since this was prior to the trial we hold that under the rule *such dismissal of the case was not actually effectuated until the filing of the written notice or order* on June 16. The Trial Court was, accordingly, without authority to make it effective on an earlier date.

*Id.* at 851 (emphasis added); *see also Green v. Moore*, 101 S.W.3d 415, 419–20 (Tenn. 2003) ("If filing a notice of voluntary nonsuit was all that was required to conclude an action, the Court of Appeals could then receive the appeal without the trial court ever entering an order or assessing costs. Such a holding would be contrary to common sense and our own precedent."); *Evans v. Perkey*, 647 S.W.2d 636, 641 (Tenn. Ct. App. 1982) (concluding that the effective date of the nonsuit is "the date of the entry of the order and not from the date of filing the notice of nonsuit"). Accordingly, the effective date of the Beals' nonsuit of their remaining claims was November 18, 2004, the date the trial court, in its discretion, permitted the Beals to take a voluntary nonsuit of their remaining claims by entering the Beals' proposed order.

## B.
## Partial Summary Judgment

Next, we turn our attention to the Beals' contention that the trial court erred in granting summary judgment to Walgreens on the punitive damages aspect of their complaint. As a result of this ruling, the Beals decided to voluntarily nonsuit their remaining claims and file an appeal to this Court contesting the grant of partial summary judgment to Walgreens. They also ask this Court to render an opinion as to whether the trial court's grant of partial summary judgment will become the law of the case should they decide to re-file their remaining claims. Walgreens contends that this Court is without jurisdiction to entertain this appeal because the grant of partial summary judgment followed by a plaintiff's voluntary nonsuit of the remaining claims does not satisfy the finality requirement in Rule 3(a) of the Tennessee Rules of Appellate Procedure. We need not address the merits of Walgreens' argument because the present appeal is moot.

"The courts, being careful stewards of their power, have developed various justiciability principles to serve as guidelines for determining whether providing judicial relief in a particular case is warranted." *Easley v. Britt*, No. M1998-00971-COA-R3-CV, 2001 Tenn. App. LEXIS 771, at *4 (Tenn. Ct. App. Oct. 16, 2001). "In general terms, the justiciability doctrine requires that cases must involve presently existing rights, live issues that are within a court's power to resolve, and parties who have a legally cognizable interest in the judicial resolution of the issues." *Charter Lakeside Behavioral Health Sys. v. Tenn. Health Facilities Comm'n*, No. M1998-00985-COA-R3-CV, 2001 Tenn. App. LEXIS 58, at *14 (Tenn. Ct. App. Jan. 30, 2001) (citations omitted). "Cases must be justiciable not only when they are first filed but must also remain justiciable throughout the entire course of the litigation, including the appeal." *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. Ap. 1994) (citations omitted). Accordingly, we will not render an opinion in an appeal which is dependent upon future events or involves a purely hypothetical set of facts. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000); *see also McIntyre*, 884 S.W.2d at 137. "If the rule were otherwise, the 'courts might well be projected into the limitless field of advisory opinions.'" *Brown & Williamson Tobacco Corp.*, 18 S.W.3d at 193 (citation omitted).

"Determining whether a claim has become moot is a question of law for the courts." *Charter Lakeside Behavioral Health Sys.*, 2001 Tenn. App. LEXIS 58, at *15–16 (citations omitted). "A moot case has lost its character as a present, live controversy, and a case will be considered moot if it no longer serves as a means to provide some sort of relief to the prevailing party."[8] *Ford Consumer Fin. Co., Inc. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998) (citations omitted). "The central question in a mootness inquiry is whether changes in the circumstances existing at the beginning of the litigation have forestalled the need for meaningful relief." *McIntyre*, 884 S.W.2d at 137 (citation omitted).

---

[8] The courts of this state have recognized numerous exceptions to the doctrine of mootness, *see McIntyre*, 884 S.W.2d at 137; *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945), none of which are applicable to the present case.

"Compensatory damages are awarded to replace the loss caused by the wrong or injury." 25 C.J.S. *Damages* § 21 (2002). Punitive damages are designed to punish the wrongdoer and to serve as a deterrent to such conduct in the future. *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). "As a general rule, in order to recover exemplary or punitive damages, actual damages must be shown, or there must be a basis for the recovery of compensatory damages." 25 C.J.S. *Damages* § 197 (2002); *see also Emerson v. Garner*, 732 S.W.2d 613, 614 (Tenn. Ct. App. 1987) (reiterating the applicability of this general principle of law in this state). After suffering a defeat on their punitive damages claim, the Beals voluntarily nonsuited their remaining claims. Thus, all causes of action which supported an award for compensatory damages have been voluntarily extinguished by the Beals. Even if we were permitted to take jurisdiction of the issue related to punitive damages and ultimately found in favor of the Beals, we certainly could not remand this case to the trial court for a trial on punitive damages alone. Stated differently, there would be no practical benefit to ruling on a stand-alone issue, which the trial court could not adjudicate once we returned the case to the lower court. Such would be in the nature of an advisory opinion, which the Beals could then rely on in the event they sought to re-institute their nonsuited claims. This we decline to do. Accordingly, the present appeal is deemed moot, therefore, it is dismissed.

## C.
### Frivolous Appeal

Walgreens, citing to, among other things, the threat of appeal contained in the letter from counsel for the Beals, has asked this Court to award it damages pursuant to section 27-1-122 of the Tennessee Code, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122 (2003). "Successful parties should not have to bear the cost and vexation of baseless appeals." *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999) (citations omitted). An appeal is frivolous when it "has no reasonable chance of success," *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977), or is "so utterly devoid of merit as to justify imposition of a penalty," *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978). The decision as to whether to award damages for the filing of a frivolous appeal lies solely within the discretion of this Court, *see Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985), and we exercise such discretion sparingly so as not to discourage legitimate appeals, *see Davis*, 546 S.W.2d at 586.

Exercising our discretion, we find that the present appeal is so devoid of merit that the imposition of damages pursuant to section 27-1-122 of the Tennessee Code is warranted in this case. Accordingly, we remand this case to the trial court for the assessment of costs and attorney's fees incurred by the Appellee in defending the present appeal.

### III.
#### CONCLUSION

For the foregoing reasons, we must dismiss this appeal because the case is not justiciable under the doctrine of mootness. Moreover, we find that this appeal is frivolous and we remand the case to the trial court for an award of damages to the Appellee as set forth herein. Costs of this Appeal are taxed to the Appellants, Mable B. Beal, deceased, by Debbie Gleason and Maynard Beal, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE