# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 23, 2010 Session

## VILLAS ON BLUE MOUNTAIN, L.P., et al., v. TENNESSEE HOUSING DEVELOPMENT AGENCY

**Appeal from the Chancery Court for Davidson County**
**No. 08-2510-II      Hon. Carol L. McCoy, Chancellor**

**No. M2009-01250-COA-R3-CV - Filed April 16, 2010**

Plaintiffs attempted to submit an application for Low-Income Housing Tax Credit with the Tennessee Housing Development Agency. The Agency refused to accept the application and plaintiffs subsequently sued, asking the Court to require the Agency to accept and process their application. The Trial Court determined that the issue was moot and plaintiffs appealed. On appeal, we affirm the Trial Court's summary judgment that the case was moot.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and JOHN W. MCCLARTY, J., joined.

F. Shayne Brasfield, Franklin, Tennessee, for the appellants, Villas on Blue Mountain, LP., and DBB, Inc.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Elizabeth C. Driver, Senior Counsel, Nashville, Tennessee, for the appellee, Tennessee Housing Development Agency.

**OPINION**

**Background**

Dean Baxter, on behalf of appellants, Villas on Blue Mountain, LP, and DBB, Inc. (Villas) attempted to submit an application for Low-Income Housing Tax Credit (LIHTC) with the Tennessee Housing Development Agency (THDA) on March 19, 2008. An employee of THDA, Ed Yandell, refused to accept the application, based on his determination that it was submitted after the established deadline. Yandell's decision to not accept Villas' LIHTC application was considered by THDA's Policy and Programs Committee on March 20, 2008 but the Committee decided to not override Mr. Yandell's decision. The Committee's decision was brought before the THDA Board of Directors on March 20, 2008. After extensive discussion, a motion to accept Villas' application was defeated by the board. By letter dated September 5, 2008, more than five months after Villas' application was rejected, Villas, through counsel, requested that THDA issue a final order regarding Villas' application. THDA's general counsel responded to this request by letter dated September 18, 2008 wherein it was explained that both the Policy and Programs Committee and the Board of Directors had considered the issue on March 20, 20008 and had no plan to consider the matter further.

Two months after receiving the September 18th letter and seven months after the application was not accepted, Villas filed a petition for judicial review in the Davidson County Chancery Court on November 17, 2008, based on the refusal of THDA to accept its application. The petition claimed that THDA's rejection of Villas' application was arbitrary and capricious because THDA's official written procedure for a LIHTC application provided that the application must be delivered to "Suite 1114" of THDA's office building in Nashville on March 19, 2008 by 1:00 p.m. According to the petition, Mr. Baxter had been informed by a THDA representative, prior to submitting the application, that the applications were actually being received on the twelfth floor of the THDA building and not the eleventh floor. Despite having been told to bring the application to the twelfth floor, Mr. Baxter claims that on March 19, 2008 he first stopped on the eleventh floor. As there were no THDA employees on that floor to receive the application, he proceeded to twelfth floor. Mr. Baxter claims he arrived at the twelfth floor office of THDA at 12:50 p.m. Upon arrival he was informed by Mr. Yandell that he had arrived twenty seconds after 1:00 p.m. and that his application could not be accepted.

The relief asked for by Villas was that the Trial Court reverse THDA's decision to not accept its LIHTC application and to require THDA to consider Villas' application. The petition did not ask for injunctive relief or a stay regarding the allocation of the 2008 LIHTC funds to other applicants while the suit was pending.

## The Summary Judgment

THDA filed a motion for summary judgment on January 23, 2009 based on the argument that the case was moot as all 2008 applications for LIHTC had been received and scored by the agency and all 2008 tax credit available to the agency had already been allocated pursuant to those applications. Petitioners responded to THDA's motion for summary judgment with the argument that the matter was not moot as there were genuine issues of material fact regarding whether some of the tax credits issued in 2008 would be returned to the agency and made available for distribution to Villas if it qualified. Alternatively, Villas argued that even if the matter were moot, an exception to the doctrine of mootness was applicable because the case is "capable of repetition yet evading review". On May 15, 2009 the Trial Court granted THDA's motion for summary judgment and dismissed the suit upon a finding that the petition was moot. Because the suit was dismissed based on a finding of mootness, the Trial Court did not consider the underlying claim that the rejection of the application was arbitrary and capricious.

Villas has appealed and raises these issues:

A. Whether the Trial Court erred when it granted summary judgment in favor of defendant, where the relief requested by petitioners for judicial review was no longer available, thereby rendering the case moot?

B. Whether the Trial Court erred when it held that petitioners' petition for judicial review was not capable of repetition yet evading review?

The scope of review of a grant of summary judgment is well established and was recently restated by our Supreme Court in *Giggers v. Memphis Housing Authority*, 277 S. W.3d 359 (Tenn. 2009):

Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown,* 955 S. W.2d 49, 50-51 (Tenn.1997); *Cowden v. Sovran Bank/Cent. S.,* 816 S. W.2d 741, 744 (Tenn.1991). A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall,* 847 S. W.2d 208, 214 (Tenn.1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial ... and that he is entitled to judgment as a matter of law." *Id.* at 215. If that motion is properly supported, the burden to establish a genuine issue of

material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id.* at 215 n. 5; *Hannan v. Alltel Publ'g Co.,* 270 S. W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd,* 847 S.W.2d at 215; *see also Blanchard v. Kellum,* 975 S. W.2d 522, 525 (Tenn.1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service.,* 960 S. W.2d 585, 588 (Tenn.1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee,* 69 Tenn. L. Rev. 175, 220 (2001). Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer,* 952 S. W.2d 423, 426 (Tenn.1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.,* 15 S. W.3d 83, 89 (Tenn.2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd,* 847 S. W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan.*

*Giggers* at 363 -364.

Appellant contends that the Trial Court's granting of summary judgment in favor of THDA upon a finding of mootness was error. The Trial Court based its finding of mootness on the facts that the 2008 LIHTC applications, filed by other developers, had been reviewed and all of the 2008 tax credits had been allocated, thus there was no available relief the Court could afford Villas. Villas makes two arguments in support of this contention. First, it argues that at the time Villas filed its petition, on November 17, 2008, the THDA had not distributed any of the 2008 tax credits. Villas alleges that THDA's distribution of the tax credits in December 2008 to other applicants when it had knowledge of the petition was wrongful as the distribution effectively denied Villas its right to judicial review of THDA's actions. Second, Villas contends that some of the tax credits disbursed to other applicants will likely be returned to THDA between December 2008 and December 2010 and some of the returned tax credits could be redistributed to 2008 LIHTC applicants, like Villas. Villas acknowledges that the returned tax credits may not exist currently, but argues that they are expected to become available. Based on this assumption, Villas argues the Trial Court could have issued an order that any returned tax credits be awarded to Villas as the relief sought by the petition, thus the case was not moot.

Appellant's cites no law in support of these two contention nor does it develop the

arguments in its brief.

The determination of whether a case is moot is a question of law. *Alliance for Native American Indian Rights in Tennessee, Inc. v. Nicely*, 182 S.W.3d 333, 339 (Tenn. Ct. App. 2005)(citing *Charter Lakeside Behavioral Health Sys. v. Tennessee Health Facilities Comm'n,* No. M1998-00985-COA-R3-CV, 2001 WL 72342 at *5 (Tenn. Ct. App. Jan. 30, 2001); *Orlando Residence, Ltd. v. Nashville Lodging Co.,* No. M1999-00943-COA-R3-CV, 1999 WL 1040544 at *3 (Tenn. Ct. App. Nov.17, 1999)). A moot case is one that is no longer justiciable because it no longer involves a present, ongoing controversy. *Alliance for Native American Indian Rights* at 338; *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. App. 1994). A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party. *McIntyre* at 137. A moot case is one that seeks a judgment on a matter that, when rendered, cannot have any practical effect upon a then-existing controversy; one in which no relief can be granted; or one in which the judgment rendered cannot be carried into effect. *Boyce v. Williams,* 389 S.W.2d 272, 277 (Tenn. 1965). Cases must remain justiciable throughout the course of the litigation and a case that becomes moot after filing but before judgment will be dismissed. *Alliance for Native American Indian Rights* at 338.

Villas' petition for judicial review requested that the Court "require the THDA to consider Villa and DBB's LIHTC Application." However, it is undisputed that the process of considering and scoring applications for 2008 LIHTC was concluded in late December 2008 when THDA allocated the 2008 tax credits to successful applicants. At the time the Trial Court granted summary judgement the scoring process and distribution of 2008 tax credits were over. There were no more tax credits available for distribution, thus no court could grant the relief requested, rendering the case moot.

Villas' argument that THDA's disbursement of the 2008 tax credits in December 2008 was an attempt to deny Villas' right to review because THDA had knowledge of the petition is disingenuous. If Villas wanted to stop THDA from distributing the 2008 tax credits until its petition was heard, Villas should have filed its petition earlier and, more importantly, it should have sought injunctive relief. It did neither. Villas offers no explanation, nor does it cite any law, that supports its contention that THDA bore the responsibility of keeping the case justiciable, when Villas failed to make any attempt to do so itself.

Villas' argument that some of the distributed 2008 tax credits may be returned to THDA in the future does not make this case a live controversy. Under the LIHTC program, developers have up to two years to complete the projects for which they receive tax credit. The program also provides that if the projects are not timely completed, the tax credits received must be returned. Therefore, it is possible that other developers' 2008 tax credits

will be returned to THDA between 2008 and 2010. However, the federal law governing the LIHTC program requires that tax credit returned by a developer in a year subsequent to the year the credit was issued be allocated pursuant to the Qualified Allocation Plan in effect in the year in which the tax credit is returned. *See* 26 C.F.R. § 1.42-14. Specifically, the regulation provides that a state's allocation of housing credit is composed of four parts, one of which is "the amount of State housing credit ceiling returned in the calendar year (the returned credit component)." 26 C.F.R. § 1.42-14 (a)(iii). The returned credit component is:

> the housing credit dollar amount returned during the calendar year that was validly allocated within the State in a prior calendar year to any project that does not become a qualified low-income housing project within the period required by section 42, or as required by the terms of the allocation. The returned credit component also includes credit allocated in a prior calendar year that is returned as a result of the cancellation of an allocation by mutual consent or by an Agency's determination that the amount allocated is not necessary for the financial feasibility of the project.

26 C.F.R. § 1.42-14 (d)(1). Thus, any 2008 tax credit that is returned in a subsequent calendar year will be reallocated under the Qualified Allocation Plan applicable for the year in which the tax credit is returned to THDA. Accordingly, Villas' argument that this case is not moot because 2008 tax credit may be returned in the future and could then be redistributed to Villas pursuant to its 2008 LIHTC application is without merit. Any 2008 tax credit returned to THDA would have to be reallocated under the Qualified Allocation Plan in place during the year the tax credit was returned to LIHTC.

Finally, appellant makes an alternative argument that, even if the case is moot, the Trial Court could have considered it based on a recognized exception to the Mootness Doctrine. Tennessee Court have recognized several exceptions to the Mootness Doctrine and if this Court finds that one of the exceptions applies to the case before it, the Court has the discretion to reach the merits of the case despite the fact that the case has become moot. *Alliance for Native American Indian Rights* at 339. Villas argues that because THDA's actions in this case were capable of repetition and that these actions, if repeated, will evade judicial review, the case should have been decided on its merit. Tennessee courts recognize the "capable of repetition yet evading review" exception to the mootness doctrine, *Alliance for Native American Indian Rights* at 339 (citing *State ex rel. McCormick v. Burson,* 894 S.W.2d 739, 742 (Tenn. Ct. App.1994)), but that exception is not applicable here.

As explained by the Court in *Alliance for Native American Indian Rights,* the courts invoke the "capable of repetition yet evading review" exception to the mootness doctrine only in exceptional cases. *Id*. at 339 - 340). Parties requesting that a court invoke the

exception must demonstrate the following:

> (1) [A] reasonable expectation that the official acts that provoked the litigation will occur again, (2) a risk that effective judicial remedies cannot be provided in the event that the official acts reoccur, and (3) that the same complaining party will be prejudiced by the official act when it reoccurs. A mere theoretical possibility that an act might reoccur is not sufficient to invoke the "capable of repetition yet evading review" exception. Rather, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party.

*Id*. (citing *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1184, 71 L.Ed.2d 353 (1982); 1 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law § 2.13, at 37 (3d Ed. Supp.2005)).

Villas argues that there is "a reasonable expectation that the official acts that provoked the litigation will occur again" based on THDA's 2009 Qualified Allocation Plan, which sets forth the instructions for filing a LIHTC application in 2009.[1] Villas states that the 2009 Qualified Allocation Plan shows that THDA intends to follow the same arbitrary and capricious procedures with regarding to acceptance of the 2009 LIHTC applications as is used in its treatment of Villas' 2008 application. Namely, the 2009 instructions, while indicating that Suite 1200 is the appropriate location to deliver the application, do not provide a more specific location within Suite 1200. Further, although the instructions clearly stated that the deadline for delivery of the application is 1:00 p.m., there is no warning that an application delivered one second past 1:00 p.m. will be refused. Villas claims that the application delivery instructions in the 2009 Qualified Allocation Plan are no more clear than those in the 2008 version and that it is "highly probable that LIHTC applicants will find themselves in the same situation as [Villas]".

This argument is without merit. First, the 2009 Qualified Allocation Plan clearly provides in bold lettering the deadline for submitting the initial LIHTC application:

> **No Initial Applications will be accepted after 1:00 PM Central Daylight Time on Friday, May 1, 2009. No Initial Applications will be accepted at any location other than the location specified in Part VI-B.**

Part VI-B provides that the Initial Application must be delivered to:

---

[1] Villas attached THDA's 2009 Qualified Allocation Plan as Exhibit 4 to the deposition of Dean Baxter. THDA did not dispute its authenticity.

Tennessee Housing Development Agency
Suite 1200
404 James Robertson Parkway
Nashville, TN 37243-0900

The information provided in the 2009 Qualified Allocation Plan regarding delivery of the Qualified Allocation Plan is clear and obvious, i.e., Initial applications need to be delivered by 1:00 p.m. on May 1, 2009 to suite 1200 of the THDA building. The language is reasonable and puts an applicator on notice of the deadline requirements or the place for delivery of the application.[2]  Appellant has failed to show a "reasonable expectation or a 'demonstrated probability' that the same controversy will reoccur.

Moreover, Villas did not argue that it will be prejudiced by language in the 2009 QAP as required by factor 3 above (that the same complaining party will be prejudiced by the official act when it reoccurs). Villas, in its brief, refers to generic "LIHTC applicants" who will find "themselves in the same situation as" Villas did in 2008 because of the inadequacies of the 2009 Qualified Allocation Plan.  Accordingly it would be "theoretical" that Villas itself would be prejudiced by the language in the 2009 Qualified Allocation Plan, and in the event Villas ever submits another LIHTC application, they would make sure they made the deadline and remembered the location of the filing.

Factor two, above, that there must be a "risk that effective judicial remedies cannot be provided in the event that the official acts reoccur", is not present here either. In the event Villas or another LIHTC applicant cannot figure out when and where to deliver its application based on the Qualified Allocation Plan and the application is refused, the applicant would have an opportunity to seek a judicial remedy by taking certain actions Villas simply failed to take. First, the petition could have been filed any time after March 20, 2008, when the THDA Board confirmed Mr. Yandell's decision to not accept Villas' application as it was untimely. Instead, Villas waited almost eight months before filing the petition, and could have but failed to seek injunctive relief. Villas' actions were simply too little, too late, and in the event this suit were to reoccur, the party seeking judicial relief could take actions to avoid the suit becoming moot.

Accordingly, the three factors established by the Tennessee courts to invoke the "capable of repetition yet evading review" exception to the mootness doctrine, are not

---

[2] In fact, Exhibit 4 to Mr. Baxter's affidavit, relied on by Villas to show that the QAP is not clear as to the deadline, provides "[due to the competitive nature of the Tax Credit reservation and allocation process, time is of the essence of this QAP." and "[deadlines] established . . . cannot be waived or extended."

present here.

We affirm the Trial Court's decision and remand, with the cost of the appeal assessed to the plaintiffs, Villas on Blue Mountain, LP., and DDB, Inc.

_____
HERSCHEL PICKENS FRANKS, P.J.