IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 15, 2020

**IN RE CASSI J.**

**Appeal from the Juvenile Court for Hamilton County**
**Nos. 280944; 282506      Robert D. Philyaw, Judge**

_____

**No. E2019-00727-COA-R3-JV**

_____

After experiencing financial difficulties, a mother sent her child to live temporarily with a cousin. The cousin filed a petition in the juvenile court seeking temporary custody of the child. After the juvenile court granted the cousin's petition, the child's grandmother filed a petition for custody alleging that the child was dependent and neglected and then filed a motion to dismiss the cousin's petition for temporary custody. The juvenile court denied the grandmother's motion to dismiss and ordered that temporary custody of the child remain with the cousin. The grandmother sought and was granted a rehearing. After the rehearing, the juvenile court affirmed its decision and the grandmother appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and CARMA DENNIS MCGEE, J., joined.

Yvette S.B., West Jordan, Utah, pro se.

Brian A. Caldwell, Chattanooga, Tennessee, for the appellee, Latrecia J.J.

Rex V. Sparks, Chattanooga, Tennessee, for the appellee, Karie S.J.

Robin R. Flores, Chattanooga, Tennessee, guardian ad litem.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Karie S.J. ("Mother") is the biological mother of Cassi J., born in April 2010.[1] From 2010 until 2012, Mother and Cassi resided with Cassi's maternal grandmother, Yvette S.B. ("Grandmother") in Chattanooga, Tennessee. Grandmother moved to Utah in 2012, but Cassi and Mother remained in Tennessee. A couple of years later, in 2014, Mother and Cassi moved to Utah and again resided with Grandmother. After approximately two and a half years, the relationship between Mother and Grandmother became strained and they began quarreling on a frequent basis. Consequently, Mother and Cassi moved into a separate apartment in July 2017.

In January 2018, Mother contacted her cousin, Latrecia J.J. ("Cousin"), who lived in Tennessee. Mother stated that she was experiencing financial difficulties and asked Cousin to allow the child to live with her in Tennessee until Mother could return to Tennessee and "get back on her feet." Cousin agreed and made flight arrangements for the child to move from Utah to Tennessee. Shortly thereafter, Mother signed an affidavit granting Cousin power of attorney over the child so that Cousin would have the legal authority to act on Mother's behalf for all matters regarding the child while Mother still resided in Utah.

On January 18, 2018, Cousin filed a petition for temporary custody so that she could enroll Cassi in school. In the petition, Cousin stated that she was requesting temporary custody of the child because Mother was unable to adequately provide for her at that time due to financial hardships.[2] The juvenile court entered an order on February 12, 2018, granting Cousin temporary custody of the child and advising Mother to send a letter to the court advising it that she was aware of the matter and of her wishes regarding custody. Mother complied with the court's request and sent a signed affidavit acknowledging that Cousin had been granted temporary custody of the child and stating that she had no objections to the custody order.

After learning that Cousin had been granted temporary custody, Grandmother filed a petition in the juvenile court on April 24, 2018, seeking custody of the child because she was "a dependent and neglected child within the meaning of the law of the State of Tennessee." Grandmother asserted in her petition that it was in the child's best interest to reside with Grandmother in Utah because Grandmother had cared for and nurtured the child since birth. Grandmother then retained counsel in Utah and filed a petition for

---

[1] Tremayne C.P. ("Father"), the child's biological father, resides in Chattanooga, but he has been "mostly absent" from the child's life. He is not a party to this appeal.

[2] Both Mother and Father received notice of the custody proceedings.

guardianship in the Third District Court of Salt Lake City, Utah in June 2018, alleging that the juvenile court in Tennessee lacked jurisdiction to determine custody of the child because Utah was the child's home state under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Tenn. Code Ann. §§ 36-6-201—243.

On July 16, 2018, Grandmother filed a motion in the juvenile court seeking to dismiss Cousin's petition for temporary custody. She argued that Cousin's petition should be dismissed because the juvenile court lacked subject matter jurisdiction to hear the case. That same day, the juvenile court appointed a guardian ad litem for the child. The matter was heard by a juvenile court magistrate. Following arguments of counsel regarding the child's home state and a home state determination telephone conference between the magistrate and the judge for the Third District of Salt Lake City, the magistrate denied Grandmother's motion and ordered that temporary custody remain with Cousin. Four days later, Grandmother filed a notice of rehearing appealing the decision to the juvenile court judge.

The rehearing occurred on March 18, 2019. At the rehearing, Grandmother testified that Cassi resided with her for six years and, during that time, Grandmother had "constantly tak[en] care of [Cassi], nurtur[ed] her." Upon cross examination, however, Grandmother admitted that the child only resided with her for four years, not six, and that the child had never been removed from Mother's custody. When asked about her dependency and neglect claim, Grandmother acknowledged that she had never believed that the child was in any danger while living with Cousin and that Cousin was properly caring for the child. She wanted custody of Cassi merely "because [Cousin] had custody," not because she believed the child was dependent and neglected. In fact, Grandmother stated that, when filing her petition, she had not really wanted custody of Cassi; she only wanted visitation with the child. Grandmother admitted that both Mother and Cousin had allowed her to visit with the child in Chattanooga.

Both Mother and Cousin testified that they supported Cassi having a relationship with Grandmother and that they had not prevented Grandmother from visiting with her in Chattanooga. Cousin stated that Grandmother had been allowed to "call[] frequently and speak[] with Cassi on the phone." Mother testified that she had worked with Cousin to facilitate Grandmother's visitation with Cassi and that she was willing to continue doing so. She felt comfortable with Grandmother visiting Cassi in Chattanooga but did not believe visitation should occur in Utah because she did not trust Grandmother to return the child to Tennessee.

According to Mother, she returned to Tennessee as soon as the lease for the apartment she had in Utah expired. She wanted to move back to Tennessee because, unlike in Utah, she would have a large family support system. All of her family, except for Grandmother and her sister, live near Chattanooga. Upon returning to Chattanooga, Mother obtained employment and began paying off some debt and court fees so she could

get her driver's license restored. Initially, she rented a room from a friend but, by the time of the rehearing, she was renting her own residence.

Regarding the child's relationship with Mother, Cousin testified that Cassi "absolutely loves" spending time with Mother and "lights up" whenever Mother visits. She stated that Mother visits Cassi "whenever she wants. She comes on the weekends, calls her to speak with her. . . . [Mother will] come and spend the night sometimes and stay over. Other times they'll go to buy video games and go to Walmart and do things together."

The juvenile court entered an order on March 29, 2019, affirming the magistrate's decision to award temporary custody of the child to Cousin. The juvenile court explained its decision as follows:

> While the Court is aware of the petition grandmother filed in Utah and the conversations between the Utah Judge and the Magistrate here, there is absolutely no evidence that this child belongs in Utah.[3] She is her mother's child. Her mother made responsible decisions and presents as a mature and responsible caretaker. Although she needed help, she had none in Utah. Therefore, she sought help from family here, and they did what family members are meant to do. [Cousin] has been and continues to be a tremendous resource for this mother and for Cassie. Based on the aforementioned it is evident to the Court that the mother is on track to attain full reunification based on her efforts and the fact that the child is thriving in Chattanooga with the assistance of the family support system available to them here.

Grandmother timely appealed and presents the following issue for our review: whether the trial court erred in awarding custody of the child to Cousin.

STANDARD OF REVIEW

In non-jury cases, like this one, we review a trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013); *In re NRG*, No. E2006-01732-COA-R3-CV, 2007 WL 1159475, at *3 (Tenn. Ct. App. Apr. 19, 2007). We review a trial court's conclusions of law de novo without a presumption a correctness. *Armbrister*, 414 S.W.3d at 692.

---

[3] On appeal, Grandmother does not challenge the juvenile court's home state determination.

ANALYSIS

I. Appellate Brief Requirements.

We begin by noting that Grandmother is a pro se litigant. This Court has stated the following principles with regard to pro se litigants:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (citations omitted); *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct App. 2003). Additionally, we allow pro se litigants some latitude in preparing their briefs by applying less exacting standards than those applied to briefs drafted by lawyers. *Young*, 130 S.W.3d at 63.

Cousin, Mother, and the guardian ad litem all argue that we should affirm the trial court's decision because Grandmother's appellate brief fails to comply with the requirements of Rule 27 of the Tennessee Rules of Appellate Procedure or Rule 6 of the Rules of the Court of Appeals. Tennessee Rule of Appellate Procedure 27 governs the content of appellate briefs. Subsection (a) of that rule identifies the requirements for the appellant's brief and provides, in pertinent part, as follows:

> The brief of the appellant shall contain under appropriate headings and in the order here indicated:
> (1) A table of contents, with references to the pages in the brief;
> (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
> . . . .
> (4) A statement of the issues presented for review;
> (5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;
> (6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;
> (7) An argument, which may be preceded by a summary of argument, setting forth:

(A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(8) A short conclusion, stating the precise relief sought.

Likewise, Rule 6 of the Rules of the Court of Appeals provides, in pertinent part:

(a) Written argument in regard to each issue on appeal shall contain:

(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) A statement of each determinative fact relied upon with citation to the record where evidence of each fact may be found.

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

We agree that the brief Grandmother submitted fails to comply sufficiently with the foregoing rules. Although her brief contains several deficiencies, we need not recite each one. Most importantly, however, Grandmother's brief fails to make appropriate references to the record and to cite to relevant authority in support of her arguments. Generally, when a party fails to refer properly to the record or to cite to relevant authority, we consider that issue waived. *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). This Court stated in *Newcomb v. Kohler Company*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006), that "[a] skeletal argument that is really nothing more than an assertion will not properly preserve a claim[.]" We have no duty "to verify unsupported allegations in a party's brief or to research and construct the party's argument." *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009).

- 6 -

Despite the deficiencies in Grandmother's brief, Rule 2 of the Tennessee Rules of Appellate Procedure permits this Court to waive these briefing requirements if good cause exists.[4]  *Chiozza*, 315 S.W.3d at 489.  We hereby exercise our discretion under Rule 2 and consider the substance of Grandmother's appeal because public policy prefers that courts resolve cases on their merits rather than dismiss them due to procedural deficiencies, especially in cases involving the interests of children.  *See Chiozza*, 315 S.W.3d at 489; *see also Norton v. Everhart*, 895 S.W.2d 317, 322 (Tenn. 1995).

## II. Custody Determination.

### A. Grandmother's relationship with the child.

Grandmother argues that the trial court erred in awarding custody of the child to Cousin because it failed to consider the existing parent/child relationship between Grandmother and the child in light of the child residing with Grandmother since birth.  Contrary to Grandmother's assertion, examination of the trial court's March 29, 2019 order shows that the court did, in fact, consider Grandmother's relationship with the child when deciding to affirm the award of temporary custody to Cousin.  In its order, the court found as follows:

> After careful review it is clear to the Court that even during the time mother and child lived in the same apartment as the grandmother, mother has always been the primary caretaker of the child.  The mother testified credibly of problems in the home she and the child shared with her mother . . . that caused her to obtain separate housing.
> . . . .
> Despite the various places the child has lived with her mother, [Grandmother] stated in her petition that the child has lived with her since she was born.  Upon cross-examination of the discrepancies, grandmother admitted the facts alleged in her petition were not completely true . . . .

The evidence does not preponderate against the trial court's findings.  Grandmother admitted that the child only resided with her for approximately four years and, during that time, Mother also resided in the home.  When asked to describe the relationship she had with the child while they lived together, Grandmother stated, "I was her grandmother.  I took her to daycare, picked her up from daycare.  I never exerted

---

[4] Rule 2 of the Tennessee Rules of Appellate Procedure provides, in pertinent part:

> For good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion . . . .

myself as being the mother. Cassi always knew [Mother] was her mother." Mother testified that she was the person who had provided the most care for the child while Grandmother "played the role any grandmother would play." She helped Mother care for Cassi "when needed," such as driving her to school.

This argument is without merit.

B. Grandmother's rights when Mother has been proven unfit.

Grandmother next argues that, by granting Cousin temporary custody of the child, the trial court must have concluded that Mother was "unfit to raise her own child." Thus, Grandmother asserts that the trial court erred in not considering her rights as a grandparent to obtain custody of the child. The record contains no support for this argument. In her petition for temporary custody, Cousin made no assertion that Mother was unfit to parent the child. Rather, Cousin stated in the petition that she was seeking temporary custody of the child because Mother was, at that time, "enduring financial hardships and [was] unable to adequately provide for the child." The juvenile court entered an order on February 12, 2018, granting Cousin temporary custody of the child. Nowhere in the order did the court find that Cousin should have custody of the child because Mother was an unfit parent. The court explained its decision as follows:

> [T]he mother . . . resides in Utah but has written a letter expressing her desires for the child to be placed with [Cousin] as well as giving her Power of Attorney.
>
> The Court found the child to be in Hamilton County without a legal guardian and granted temporary custody to [Cousin]. The Court requested the mother send a letter to the Court advising her understanding of the matter.

Grandmother alleged in her petition for custody that the child was dependent and neglected, but she admitted during the rehearing that the child was not in any danger while living with Cousin and that Cousin was properly caring for the child. In the March 29, 2019 order, the juvenile court affirmed the magistrate's decision to grant Cousin temporary custody of the child. The juvenile court again made no finding that Mother was an unfit parent. The court, in fact, found that Mother made good parenting decisions, stating as follows:

> [M]other made responsible decisions and presents as a mature and responsible caretaker. Although she needed help, she had none in Utah. Therefore, she sought help from family here, and they did what family members are meant to do. [Cousin] has been and continues to be a tremendous resource for this mother and for Cassie. Based on the

aforementioned it is evident to the Court that mother is on track to attain full reunification based on her efforts and the fact that the child is thriving in Chattanooga with the assistance of the family support system available to them here.

We note that the United States Supreme Court has held that "there is a presumption that fit parents act in the best interests of their children." *Troxel v. Granville*, 530 U.S. 57, 68 (2000). The Court explained as follows:

> "[O]ur constitutional system long ago rejected any notion that a child is the mere creature of the State and, on the contrary, asserted that parents generally have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations. . . . The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children."
>
> Accordingly, so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

*Id.* at 68-69 (quoting *Parham v. J.R.*, 442 U.S. 584, 602 (1979)). Similarly, the Tennessee Supreme Court has held that parents have a fundamental right to privacy under the Tennessee Constitution. *Hawk v. Hawk*, 855 S.W.2d 573, 579 (Tenn. 1993). Therefore, "when no substantial harm threatens a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit." *Id.* at 577. Because Mother was never found to be unfit to parent the child and because there was no proof that the child was threatened by any substantial harm, Grandmother's argument on this issue is without merit.

C. Grandmother's rights under the Grandparent Visitation statute.

Although the argument is not clearly articulated in her brief, we discern that Grandmother also argues that the juvenile court violated her grandparental rights by not granting her visitation with the child. The Grandparent Visitation Statute, Tenn. Code Ann. § 36-6-306(a) governs this issue and provides as follows:

Any of the following circumstances, when presented in a petition for grandparent visitation to the circuit, chancery, general sessions courts with domestic relations jurisdiction, other courts with domestic relations jurisdiction or juvenile court in matters involving children born out of wedlock of the county in which the petitioned child currently resides, necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents or custodian or if the grandparent visitation has been severely reduced by the custodial parent or parents or custodian:

(1) The father or mother of an unmarried minor child is deceased;

(2) The child's father or mother are divorced, legally separated, or were never married to each other;

(3) The child's father or mother has been missing for not less than six (6) months;

(4) The court of another state has ordered grandparent visitation;

(5) The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent, parents, or custodian (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child); or

(6) The child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance or severe reduction of the relationship, this relationship was severed or severely reduced by the parent, parents, or custodian for reasons other than abuse or presence of a danger of substantial harm to the child, and severance or severe reduction of this relationship is likely to occasion substantial emotional harm to the child.

The initial petition Grandmother filed in the juvenile court sought custody of the child due to dependency and neglect. Grandmother admitted at the rehearing, however that she did not believe the child was in any danger while residing with Cousin. She further admitted that she did not actually want custody of the child. She merely wanted the court to grant her visitation with the child. Grandmother stated as follows:

I just want to be able to spend time with her [Cassi] and be a grandmother. And I want her to be able to say, you know, I went to grandmother's, like other kids do. She shouldn't have to feel different like that. And you know, I just – visitation, I want it in the summers and spring break more than I do custody.

The Grandparent Visitation Statute expressly states that a grandparent may only file a petition seeking grandparent visitation "if such grandparent visitation is opposed by the custodial parent or parents or custodian." Tenn. Code Ann. § 36-6-306(a); *see also*

*Lovlace v. Copley*, 418 S.W.3d 1, 21 (Tenn. 2013). Thus, "a petitioner relying upon the Grandparent Visitation Statute must establish in the first instance that the custodial parent [or custodian] opposed or denied grandparent visitation." *Lovlace*, 418 S.W.3d at 21. Our Supreme Court has defined "opposed" as including "'situations both where visitation is denied totally and where visitation is technically not opposed, but the frequency and/or conditions imposed by the parents [or custodian] on visitation are such that it equates to a denial of visitation.'" *Id.* (quoting *Huls v. Alford*, No. M2008-00408-COA-R3-CV, 2008 WL 4682219, at *8 (Tenn. Ct. App. Oct. 22, 2008)).

In the present case, Grandmother failed to prove that Mother or Cousin denied her visitation. Cousin testified that no one had ever attempted to stop Grandmother from coming to visit Cassi in Chattanooga. She further testified that Grandmother "frequently calls and speaks with Cassi on the phone. There's no issue with that." Mother stated that she had worked with Cousin to facilitate Grandmother's visitation with the child in Chattanooga, but she did not believe it was prudent for visitation to occur in Utah because she feared Grandmother would not return the child to Tennessee. Although initially claiming that Mother and Cousin interfered with her relationship with the child, Grandmother admitted during cross-examination that both Mother and Cousin had allowed her to visit with the child in Chattanooga. She testified that what she really wanted was more visitation and for the visitation to occur in Utah. Our Supreme Court has explained, however, that "[t]he Grandparent Visitation Statute 'cannot be used by grandparents who think they are entitled to more or different visitation in the absence of a finding that the parents actually or effectively "opposed" visitation.'" *Id.* (quoting *Huls*, 2008 WL 4682219, at *8).

This argument is without merit.

D. Mootness.

Finally, Grandmother argues that the juvenile court erred in granting custody of the child to Cousin because the case was moot because Grandmother "has been present in Cassi's life since she was born." The courts of this state must only decide justiciable cases—those that "involve a genuine and existing controversy requiring the present adjudication of present rights." *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994). "A case must remain justiciable (remain a legal controversy) from the time it is filed until the moment of final appellate disposition." *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203-04 (Tenn. 2009). When a case "has lost its character as a present, live controversy," it becomes moot and is no longer justiciable. *McIntyre*, 884 S.W.2d at 137. This Court has previously explained that "[a]n issue becomes moot if an event occurring after the commencement of the case extinguishes the legal controversy attached to the issue or otherwise prevents the prevailing party from receiving meaningful relief in the event of a favorable judgment." *Witt v. Witt*, No. E2017-00884-COA-R3-CV, 2018 WL 1505485, at *4 (Tenn. Ct. App.

Mar. 27, 2018) (citing *Lufkin v. Bd. of Prof'l Responsibility*, 336 S.W.3d 223, 226 (Tenn. 2011), *Knott v. Stewart Cnty.*, 207 S.W.2d 337, 338 (Tenn. 1948), and *Cnty. of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996)).

When determining whether a case should be dismissed as moot, courts "consider many factors, including the reason that the case is alleged to be moot, the stage of the proceeding, the importance of the issue to the public, and the probability that the issue will recur." *Norma Faye Pyles Lynch Family Purpose LLC*, 301 S.W.3d at 204. A court's mootness determination presents a question of law. *Witt*, 2018 WL 1505485, at *4. If a case on appeal is determined to be moot, we "will ordinarily vacate the judgment below and remand the case to the trial court with directions that it be dismissed." *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 339 (Tenn. Ct. App. 2005).

As the party asserting mootness, Grandmother has the burden of proving "that the case lost its controversial character because of the voluntary cessation of the conduct challenged by the legal action." *Hudson v. Hudson*, 328 S.W.3d 863, 865 (Tenn. 2010). She has failed to meet her burden. Grandmother presented no proof that this case is no longer justiciable. The child is still a minor and custody of the child is still an issue of controversy, as evidenced by Grandmother appealing the trial court's decision and both Cousin and Mother defending the appeal. We find no merit in Grandmother's mootness argument.

In light of the foregoing, we conclude that the juvenile court did not err in affirming the magistrate's decision to grant Cousin temporary custody of the child.

III. Frivolous Appeal.

Cousin, Mother, and the guardian ad litem contend that they should be awarded damages for a frivolous appeal because Grandmother filed this appeal for the purpose of relitigating matters that had already been finally resolved. "Parties should not be forced to bear the cost and vexation of baseless appeals." *Young*, 130 S.W.3d at 66. Thus, Tenn. Code Ann. § 27-1-122 allows courts to award damages against parties who bring frivolous appeals. The statute provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"A frivolous appeal is one that is devoid of merit or one that has no reasonable chance of succeeding." *Young*, 130 S.W.3d at 67 (citations omitted). The determination to award damages for filing a frivolous appeal "rests solely in the discretion of this Court." *Lewis v. Williams*, No. W2015-00150-COA-R3-CV, 2015 WL 9946271, at *6 (Tenn. Ct. App. Aug. 6, 2015). We exercise our discretion to award damages for a frivolous appeal "sparingly so as not to discourage legitimate appeals." *Chiozza*, 315 S.W.3d at 493.

In the present case, Grandmother has failed to present any factual allegations or legal argument that would create any possibility that she would prevail in this Court. We, therefore, exercise our discretion and award Cousin, Mother, and the guardian ad litem their reasonable attorney's fees and costs on appeal. We remand the case to the trial court to determine the amount of the fee and cost award.

CONCLUSION

The judgment of the trial court is affirmed, and we remand the case to the trial court for the assessment of damages in accordance with Tenn. Code Ann. § 27-1-122. We tax the costs of this appeal against the appellant, Yvette S.B., for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE